UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WHEELER HOSPITALITY, INC., | § | CASE NO. 10-20166-RLJ-11 |
| PERRYTON HOSPITALITY, INC., | § | CASE NO. 10-20167-RLJ-11 |
| BORGER PROPERTIES, INC., | § | CASE NO. 10-20168-RLJ-11 |
| CHILDRESS HOSPITALITY, LP, | § | CASE NO. 10-20169-RLJ-11 |
| BORGER HOSPITALITY, INC., | § | CASE NO. 10-20170-RLJ-11 |
| DECATUR HOSPITALITY, INC., | § | CASE NO. 10-20171-RLJ-11 |
| | § | |
| Debtors. | § | **JOINTLY ADMINISTERED** |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT OF DEBTORS**

**\* \* \***

**THIS FIRST AMENDED JOINT PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE COURT AS CONTAINING ADEOUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. ALL CREDITORS HAVE THE RIGHT TO OBJECT TO THIS DISCLOSURE STATEMENT AS NOT CONTAINING ADEQUATE INFORMATION AS REQUIRED UNDER SECTION 1125(b).**

**\* \* \***

**THIS FIRST AMENDED JOINT PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT OF DEBTORS IS SUBMITTED TO ALL CREDITORS OF DEBTORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT DEBTORS' PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS JOINT PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO DEBTORS' PLAN OF REORGANIZATION. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE JOINT PLAN OF REORGANIZATION AND DISCLOSURE STATEMENTAND ATTACHMENTS WITH CARE AND IN ITS ENTIRETY.**

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., Debtors and Debtors-in-Possession in the above-captioned and numbered cases hereby respectfully propose the following First Amended Joint Plan of Reorganization and Disclosure Statement of Debtors. The required disclosures, constituting the Disclosure Statement of Debtors, are set forth in consecutively numbered paragraphs in the initial pages of this document. The contractual Plan document is set forth beginning with Plan Article 1. *Definitions used in the Disclosure Statement portion of this document are the same as set forth in Plan Article 1, Paragraphs 1.01 et seq. beginning at Page _____.*

A.  **DISCLOSURES**

**Overview of Disclosures**

1.      **Why Did Debtors File These Bankruptcy Cases?**
2.      **What is the Status of Each Debtor Entity?**
3.      **What Has Happened Since the Bankruptcy Cases Were Filed?**
4.      **What is the Status of the Litigation Involving Debtors?**
5.      **How Do Debtors Propose to Pay Their Debts?**
6.      **Basic Concepts of the Plan.**
7.      **Basic Terms for Payment of Each Class of Creditor and Interest Holders.**
8.      **Holding Company Operation – Overview.**
9.      **Specific Terms with Respect to the Holding Company and the Litigation Agreement.**
10.     **Creditors Divided into Classes.**
11.     **Creditors Have the Right to Vote on the Plan.**
12.     **Creditors Also Have the Right to Object to this Disclosure Statement and Creditors Have the Right to Object to the Confirmation of the Plan.**
13.     **The Court May Approve this Plan and Limit Creditor's Legal Rights.**
14.     **How Does a Class "Accept" the Plan?**
15.     **Which Class are You as a Creditor In, and How Do Debtors Propose to Treat the Class Under the Plan?**
16.     **Parties Other Than Debtors are Being Afforded Protection Under the Plan.**
17.     **Are Creditors and Parties-in-Interest Being Enjoined from all Litigation Against Certain Parties?**
18.     **Are Creditors and Parties-in-Interest Being Enjoined from all Litigation Against Certain Parties?**
19.     **What Compensation is Being Paid to Protected Principals?**
20.     **What if a Creditor is Not Listed in Exhibit D?**
21.     **How Do Debtors Propose to Remit Payments to Their Creditors?**
22.     **How Do Debtors Propose to Pay Their Administrative Expenses and Fee Claims Under the Plan?**
23.     **Do Debtors Intend To Assume Their Executory Contracts/Leases?**
24.     **Will Debtors Continue to File Operating Reports with the Court after Confirmation?**
25.     **What to Do for More Information.**
26.     **How Much Do Debtors Propose to Pay Creditors?**
27.     **Do Debtors Have Enough Money and Earnings to Make the Payments Called for in the Plan?**
28.     **Liquidation Analysis - Are There Any Alternatives to the Plan?**
29.     **Is There Any Risk That the Plan Might Not Succeed?**
30.     **Are There Any Tax Effects of this Plan?**
31.     **Plan Solicitation (Ignore Until Disclosure Statement is Approved).**
32.     **Vesting of Property in the Reorganized Debtors.**
33.     **Effective Date.**

1.      **Why Did Debtors File These Bankruptcy Cases?**

Each of the Debtor entities is in the business of operating Hotel Properties.  At the inception of this case, each Debtor entity, with the exception of Borger Hospitality, Inc., owned a single Hotel Property.  Borger Hospitality, Inc. owned two Hotel Properties.  All of the Debtor entities are relatively new and have recently completed construction of their respective Hotel Properties or are in the process of completing construction.

In connection with constructing the various Hotel Properties, Debtors did business with an individual by the name of Raymond Teague and his related corporation, Auer Corporation.  Debtors allege, and intend to fully litigate, causes of action relating to misconduct by both Teague and Auer.  Such litigation had already begun prior to the actual filing of the bankruptcy petitions of the various Debtor entities.  Auer and Teague in return filed lawsuits or counterclaims in lawsuits alleging that they were owed money for work performed for Debtors.  As will be shown, these jointly administered bankruptcy cases were necessitated by the conduct of Auer and Teague in such lawsuits.

**Litigation History**

Debtors are corporations engaged in business in the hotel industry.  During 2007 and 2008, Debtors entered into contracts with Auer Corporation ("Auer") whereby Auer agreed to act as the general contractor and construct seven hotels for Debtors.  Six of the seven hotels owned by Debtors are located in Childress, Ochiltree, Wise, Wheeler, Hutchinson, and Snyder Counties, Texas, all of which fall within the geographic jurisdiction of the Northern District of Texas.  One hotel is located in Martin County, Texas, which falls within the geographic jurisdiction of the Western District of Texas.

During construction of the seven hotels, litigation associated therewith sprang up all across the Northern District of Texas.  The majority of the litigation involves unpaid subcontractors hired by Auer, all of whom provided labor and materials on all of Debtors' Hotel Properties, seeking to foreclose on mechanic's liens against Debtors' Hotel Properties.

Additionally, eight lawsuits between Auer and Debtors were filed (the "Auer Litigation"), which are summarized on Exhibit A.  Among other things, each lawsuit comprising the Auer Litigation seeks either to foreclose or remove a mechanic's lien filed by Auer, relating to Debtors' Hotel Properties.  Further, as noted by Auer itself in the state-court pleadings, the cases all involve the same basic fact questions, and therefore, they are all related.  Of the eight suits constituting the Auer Litigation, three were filed in, and one was procedurally manipulated by Auer into, the 9th District Court in Montgomery County, Texas ("Montgomery County Litigation"), which court is located in the Southern District of Texas.

On February 12, 2010, without notice to Debtors of what Debtors allege to be a "secret" trial setting, Auer obtained from the 9th District Court a post-answer default judgment (the "Disputed Judgment") against Toli, Inc. and all Debtors except Perryton Hospitality, Inc.  One Debtor, Childress Hospitality, was included in the Disputed Judgment even though it was not before the 9th District Court, in the Montgomery County Litigation.  The Disputed Judgment is attached as Exhibit B.  The face amount of the judgment was in excess of $28 million.

Debtors timely filed a Motion to Set-Aside Default Judgment and for New Trial ("Motion for New Trial") on March 11, 2010.  On March 12, 2010, and before the 9th District Court had ruled on Debtors' Motion for New Trial, Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code.

Following the filing of the Chapter 11 cases, Debtors removed the Montgomery County Litigation to the Bankruptcy Court for the Southern District of Texas (the "SD Adversary Proceeding"). Shortly after the beginning of the SD Adversary Proceeding, Debtors filed a Motion to Transfer Venue ("MTV"), therein seeking an order of the Court transferring the adversary proceeding to the Bankruptcy Court for Northern District of Texas, Amarillo Division.  Debtors are all currently debtors-in-possession in Chapter 11 bankruptcy cases in the Amarillo Division.  Additionally, four of the lawsuits constituting the Auer Litigation have been removed from the state courts in which they were filed, and are currently on the docket in the Amarillo Division of the Northern District of Texas in the form of Adversary Proceedings ("Amarillo Adversaries").

Following Debtors' filing of the MTV, Auer filed its Motion for Mandatory Abstention and Remand ("Motion to Remand"), wherein it requested that the Court mandatorily abstain from hearing the adversary proceeding, and remand same to the 9th District Court in Montgomery County, Texas.  On June 24, 2010, the Court conducted a hearing ("Hearing") on the MTV and Motion to Remand.  By order of the Court, the Hearing was continued.  The continued hearing was held on August 26, 2010.  The Court requested additional briefing be filed by September 8, 2010.  On October 1, 2010, the Court granted Debtors' MTV and denied the Motion to Remand.  Venue of the SD Adversary Proceeding was accordingly transferred to Amarillo.  All of the Auer Litigation proceedings have now been consolidated for trial in the Bankruptcy Court in the Amarillo Division of the Northern District of Texas.  Special counsel has been retained to prosecute the litigation.

The entry of the Disputed Judgment, which Debtors assert was improperly obtained, was the precipitating factor that caused the Debtor entities to file bankruptcy.  All of the Debtor entities are named as defendants and, therefore, are potentially jointly liable for the Auer Judgment, except for Perryton Hospitality, Inc.  However, Auer has filed materialman's liens in the amount of $388,000 against Perryton Hospitality.  The face amount of the Disputed Judgment exceeds $28 million.  Debtors believe the Disputed Judgment will be set aside and that Debtors will prevail in their counterclaims versus Auer and Teague.

In addition to the Disputed Judgment, there are numerous mechanics lien lawsuits against various of the Debtors which will need to be dealt with in this bankruptcy proceeding.

## 2.    What is the Status of Each Debtor Entity?

The following paragraphs describe briefly the current status of each Debtor entity.

A.    Wheeler Hospitality, Inc. operates a Baymont Inn located in Wheeler, Texas.  The hotel has approximately 50 rooms.  The Senior Secured Creditor of the hotel is Citizens Bank of Shamrock ("CB Shamrock"), which has filed a proof of claim in the amount of $2,203,567.38, which will be treated in Class 2(a).  The hotel has disputed materialman's lien claims according to proof of claims filed in the approximate amount of $70,000.  The Hotel was appraised at the beginning of construction to have a value upon completion of $3,100,000.

CB Shamrock and Wheeler Hospitality have agreed to the long-term treatment of CB Shamrock's debt and have executed loan modification documents to implement that treatment. This claim will be treated as Class 2(a) in the Plan. The treatment is summarized on Exhibit C - "Summary Plan Treatment - Secured Creditors."

The day-to-day operations are managed by an employee, who is not a shareholder or officer and who receives a salary consistent with industry standards. The officers and directors are not being compensated at the present time. Wheeler Hospitality will be governed by its board of directors. As of January 4, 2011, the board of directors was Robert Stiles, William Stiles, Harish Patel, and Chetan Parikh. Wheeler Hospitality will be managed by its officers. As of January 4, 2011, its officers were: President - William Stiles, and Secretary/Treasurer - Robert Stiles.

The entity is listed as a defendant in the Disputed Judgment.

B.      Perryton Hospitality, Inc. operates a Baymont Inn located in Perryton, Texas. The hotel has approximately 69 rooms. The Senior Secured Creditor of the hotel is Citizens Bank of Shamrock, which has filed a proof of claim in the amount of $2,894,325.59. The Hotel was appraised at the beginning of construction to have a value upon completion of $3,800,000. The hotel has disputed materialman's lien claims according to proof of claims filed in the approximate amount of $243,000.

The entity is not a party to the Disputed Judgment. However, Auer has filed a proof of claim asserting a debt against Perryton in the amount of $388,934.

CB Shamrock and Perryton Hospitality have agreed to the long-term treatment of CB Shamrock's debt and have executed loan modification documents to implement that treatment. This claim will be treated as Class 2(b) in the Plan. The treatment is summarized on Exhibit C - "Summary Plan Treatment - Secured Creditors."

The day-to-day operations are managed by an employee, who is not a shareholder or officer and who receives a salary consistent with industry standards. The officers and directors are not being compensated at the present time. Perryton Hospitality will be governed by its board of directors. As of January 4, 2011, the board of directors was Bindu Bhatia, Chetan Parikh, and Preyesh Kumar. Perryton Hospitality will be managed by its officers. As of January 4, 2011, its officers were: President - Vikas Gupta, Secretary - Chetan Parikh, and Treasurer - Preyesh Kumar.

C.      Childress Hospitality, LP operated a Hampton Inn located in Childress, Texas. The hotel had approximately 64 rooms. The Senior Secured Creditor of the hotel is Citizens National Bank of Childress ("CNB"), which has filed a proof of claim in the amount of $4,109,823.48. The Hotel was appraised at the beginning of construction to have a value upon completion of $5,050,000. The hotel has disputed materialman's lien claims according to proof of claims filed in the approximate amount of $476,000. During the bankruptcy, CNB and debtor entered into multiple cash collateral orders. However, CNB also sought and obtained relief from the stay. CNB foreclosed on its collateral on October 5, 2010. CNB was the successful bidder at the foreclosure sale, and Debtor assumes CNB is operating the property. Debtors propose to treat CNB's claim as being satisfied through the foreclosure.

Childress Hospitality continues to have assets in the form of litigation claims against Teague and Auer. Childress Hospitality is also evaluating possible claims against CNB. Childress Hospitality has no employees, it is governed by its board of directors, Harish Patel, Chetan Parikh, and Preyesh Kumar, and managed by its officers, President - Harish Patel, Secretary - Chetan Parikh, and Treasurer - Preyesh

Kumar. No officers or directors are receiving any compensation from Childress Hospitality.

The entity is listed as a defendant in the Disputed Judgment.

D.       Borger Hospitality, Inc. is unique among the Debtor entities in that it had two Hotel Properties at the inception of the bankruptcy. The first Hotel Property is a Baymont Inn located in Snyder, Texas. The hotel has approximately 70 rooms. The Senior Secured Creditor of the hotel is West Texas State Bank ("WTS Bank"), which has filed a proof of claim in the amount of $2,836,821.90. The Hotel was appraised at the beginning of construction to have a value upon completion of $4,100,000. The hotel has disputed materialman's lien claims according to proof of claims filed in the approximate amount of $170,000.

WTS Bank and Borger Hospitality have agreed to the long-term treatment of WTS Bank's debt and have executed loan modification documents to implement that treatment. This claim will be treated as Class 2(d) in the Plan. The treatment is summarized on Exhibit C - "Summary Plan Treatment - Secured Creditors."

The day-to-day operations are managed by an employee, who is not a shareholder or officer and who receives a salary consistent with industry standards. The officers and directors are not being compensated at the present time. Borger Hospitality will be governed by its board of directors. As of January 4, 2011, the board of directors was Harish Patel and Chetan Parikh. Borger Hospitality will be managed by its officers. As of January 4, 2011, its officers were: President - Harish Patel, and Secretary - Chetan Parikh.

Borger Hospitality also owned a Hotel Property in Stanton, Texas. The Stanton Property was under construction when the petition was filed. The property was completed during the pendency of the bankruptcy and opened. The Stanton Property was financed by Citizens National Bank of Childress ("CNB"). It had a lien against it in the amount of $2,948,726. The Hotel was appraised at the beginning of construction to have a value upon completion of $4,400,000. The hotel has disputed materialman's lien claims according to proof of claims filed in the amount of $66,000. CNB entered into post-petition financing and cash collateral orders with the debtor. CNB asserted, and debtor disputed, that due to failure to comply with provisions of such orders the stay terminated. CNB posted the property for foreclosure in September, 2010, but did not conduct the sale. CNB has entered into negotiations with the debtor and the two largest shareholders of the debtor regarding the property. CNB reposted the property for sale on October 5, 2010, and sold the property at the sale.

E.       CNB foreclosed on its collateral on October 5, 2010. The successful bidder at the foreclosure sale was a third party which is now operating the property. The third party is affiliated with Robert Stiles and William Stiles, who are shareholders of Borger Hospitality, and the third party is operating the property. Debtors propose to treat CNB's claim as being satisfied through the foreclosure.

With respect to the Stanton Property, Borger Hospitality continues to have litigation claims against Teague and Auer with respect to the Stanton Property. Borger Hospitality is also evaluating possible claims against CNB relating to the foreclosure.

The entity is listed as a defendant in the Disputed Judgment.

F.      Borger Properties, Inc. owns a Hampton Inn located in Borger, Texas. The hotel is under construction and will have 64 rooms. It is financed by the National Bank of Commerce in Shamrock, Texas ("NBC Shamrock"), which has filed a proof of claim as of the petition date in the amount of $4,521,335.26. The bank has made post-petition financing available to complete construction of the hotel. The expected secured claim amount at Confirmation is expected to be close to $6,000,000. The current notes are accruing interest at 6.0% interest. The debtor is proposing to convert to permanent financing upon completion of construction at an interest rate of 5%. The hotel has disputed materialman's lien claims according to proof of claims filed in the approximate amount of $310,000. The property is expected to be completed and opened for business prior to Confirmation. Because of the market in which the property is located, the hotel is expected to be profitable within several months of opening.

NBC Shamrock and Borger Properties have agreed to the long-term treatment of NBC Shamrock's debt and have executed loan modification documents to implement that treatment. This claim will be treated as Class 2(a) in the Plan. The treatment is summarized on Exhibit C - "Summary Plan Treatment - Secured Creditors."

The day-to-day operations will be managed upon completion by an employee, who will not be a shareholder or insider and who will receive a salary consistent with industry standards. The officers and directors are not being compensated at the present time. Borger Properties will be governed by its board of directors. As of January 4, 2011, the board of directors was Harish Patel and Chetan Parikh. Borger Properties will be managed by its officers. As of January 4, 2011, its officers were: President - Harish Patel and Secretary/Treasurer - Chetan Parikh.

The entity is listed as a defendant in the Disputed Judgment.

G.      Decatur Hospitality, Inc. operates a Baymont Inn located in Decatur, Texas. The Decatur Property was under construction when the bankruptcy petition was filed, but has since been completed and opened for business as of August 2010. The hotel has approximately 63 rooms. The Senior Secured Creditor of the hotel is Interstate Bank ("Interstate"), which has filed a proof of claim in the amount of $2,877,961.84. The Hotel was appraised at the beginning of construction to have a value upon completion of $4,400,000. The hotel has disputed materialman's lien claims according to proof of claims filed in the approximate amount of $130,841. Since opening, the property has not had sufficient cash flow to satisfy Interstate Bank's debt service. Interstate Bank and the Debtor, and the guarantors on the bank's debt, have been in negotiations regarding disposition of the property. The bank has also filed suit against the guarantors and moved to terminate the stay. As a result of the negotiations, guarantors have agreed to provide additional capital to satisfy Interstate. The detailed terms of the agreement with Interstate are set forth in the Agreed Order Modifying Stay entered on December 14, 2010.

Interstate and Decatur Hospitality have agreed to the long-term treatment of Interstate's debt and have executed loan modification documents to implement that treatment. This claim will be treated as Class 2(g) in the Plan. The treatment is summarized on Exhibit C - "Summary Plan Treatment - Secured Creditors."

The day-to-day operations are managed by an employee named Judy Kurani, who receives a salary consistent with industry standards ($2,000 per month). Ms. Kurani is a shareholder and President of Decatur Hospitality, but is not being compensated for those positions. The officers and directors are not being compensated at the present time. Decatur Hospitality will be governed by its board of directors. As of January 4, 2011, the board of directors was Harish Patel, Chetan Parikh, and Judy Kurani. Decatur

Hospitality will be managed by its officers.  As of January 4, 2011, its officers were: President - Judy Kurani, Secretary - Anil Patel, and Vice-President - Ashok Suresh.

The entity is listed as a defendant in the Disputed Judgment.

**3.      What Has Happened Since the Bankruptcy Cases Were Filed?**

Since filing bankruptcy, Debtors have continued to operate their respective Hotel Properties as debtors-in-possession.  The Hotel Properties which were open have continued to collect revenue and pay their ongoing ordinary business expenses.  Further, except as noted in the previous paragraph, Debtors have negotiated cash collateral agreements with their Senior Secured Creditors in order to allow them to continue in business and repay their debts.

Borger Properties was the only Hotel Property which was under construction on the Petition Date and was not opened as of January 4, 2011.  Debtors have continued to work toward completion of construction.  Debtors have negotiated debtor-in-possession financing agreements with NBC Shamrock in order to have sufficient funds to complete construction of the hotels.  The property is expected to be completed and opened prior to Confirmation.

**4.      What is the Status of the Litigation Involving Debtors?**

Debtors were involved in multiple lawsuits on the Petition Date.  With one exception, those lawsuits have been removed from state court to the bankruptcy court and are pending in the bankruptcy court.  Resolution of those lawsuits which do not involve Auer are necessary in order to determine the validity of claims against Debtors.  In particular, most of the litigation involves lien claims by unpaid sub-contractors.  Debtors have taken the position in numerous of these suits that the unpaid sums of the contractors were not paid by Auer and the contractors must look to Auer to collect payment or, alternatively, Debtors' liability is limited to retainage amounts as provided in the Texas Property Code.  (Debtors have prepared cash flows assuming all these claims would need to be paid.)

As detailed previously, all of the litigation with Auer has now been removed to the Amarillo Division of the Northern District of Texas.  All litigation with Auer will be consolidated in order to determine what claim, if any, Auer has against Debtors.  The motion to set aside Auer's Judgment was specially set for January 18, 2011.  Debtors believe Auer's Judgment will be set aside.

Depending on the outcome of the Auer Litigation, Debtors may have claims relating to legal representation prior to the bankruptcy.  Debtors are investigating the claims, but are not able at the present time to give a value to such claims.  The claims, if any, will be retained by Debtors.

**5.      How Do Debtors Propose to Pay Their Debts?**

Debtors' revenue from the operation of the Hotel Properties will be used to pay creditors and fund the Auer Litigation.  Exhibit D summarizes all claims by operating Debtor entity (excluding Childress).  Exhibit E is the "Plan Cash Flow," which is a cash flow exhibit that also summarizes the treatment of each class.

Debtors have done a significant analysis of the projected cash flow for each Hotel Property that will continue to operate.  That analysis of cash flow begins with a calculation of "net operating profit", which is also Debtors' "Net Cash Flow Before Debt Service."   The detailed net operating profit

calculations take into account historical performance, market trends, economic trends, occupancy rates, various room costs, and all operating expenses.  The resulting net operating profit represents the amount of cash available to pay Plan payments.  The detailed net operating profits for each Hotel Property are set forth in Exhibit F - Operating Cash Flow Projections by Property.  Because of the foreclosures on the Childress and Stanton properties, those properties are not included in Exhibit F.

The resulting net operating profit cash flows are summarized on Exhibit F for each property for each year.  The annual cash flow is reduced to a monthly average cash flow to input into Exhibit E.  Exhibit E then provides a detailed analysis calculating the net monthly Plan cash flow after Plan payments based on the treatment of the various classes set forth in this Plan.  The estimation of the various classes of claims which are utilized in Exhibit E are provided from Exhibit D.

## 6.    Basic Concepts of the Plan.

Properties will be retained based on an analysis of the cash flow and negotiations with the various secured lenders.  As of the preparation of this first amended disclosure statement, two properties had been foreclosed upon, leaving five properties which will be retained.

The properties that have been foreclosed upon by secured creditors are: Baymont Inn Stanton and Hampton Inn, Childress.

The remaining properties are expected to be retained.  The properties retained will generate sufficient cash flow to pay claims as set forth in the Plan.

A Holding Company has been formed for the purpose of consolidating responsibility for the Auer Litigation into one entity.  The Holding Company expects to hold the controlling interest in three of the Debtors which will provide monthly cash flow.  In addition, the Holding Company will collect fees from each Debtor entity pursuant to the Litigation Agreement.  This cash flow will allow the Holding Company to be able to fund the Auer Litigation as well as to fund the payment required to confirm a plan for the Debtor entities surrendering their respective hotel properties.  It is expected the Holding Company will hold the controlling interest in all Debtor entities except Perryton Hospitality and Borger Properties.

The Holding Company will enter into a Joint Litigation Agreement with all Debtors and Toli, Inc. to prosecute the Auer Litigation, which will give control of the litigation to the Holding Company. but the Litigation Agreement will require Debtors and Toli, Inc. to pay a percentage of gross revenue, or fixed amount, to the Holding Company to fund the expenses of the litigation.  It is anticipated that at Confirmation, there will collectively be $200,000 or more available to fund the administrative expenses necessary to confirm the plan and to fund the Auer Litigation.  This will include funds that may be needed to cure defaults, if any, with Senior Secured Creditors.  This money will be from a combination of cash on hand in the Debtor entities and contributions that will be made by parties being issued interests in the Holding Company, and contributions by shareholders of the respective Debtors.

## 7.    Basic Terms for Payment of Each Class of Creditor and Interest Holders.

RETAINED PROPERTY CREDITORS: The treatment of creditors holding claims against properties that are retained will be treated as follows:

A.    Class 1 - Taxes.  Claims of the Internal Revenue Service, which are minimal, will be paid at Confirmation or as they come due.  Ad valorem tax authorities will be paid in full as such taxes

become due.  Taxes due for the year 2010 will be paid when due on or before February 1, 2011.  Exhibit D lists the estimated tax claims.  Property taxes for future years will be timely paid.  Debtors reserve the right to negotiate different treatment with each taxing authority individually.

B.      Class 2 - Senior Secured Creditors.  Debtors will continue to pay Senior Secured Creditors their respective secured claims.  Debtors have negotiated the treatment of each Senior Secured Creditors.  The treatment for each Senior Secured Creditor is summarized in Exhibit C.  Further, Debtors will continue to pay the property taxes due on the Hotel Properties and will maintain acceptable insurance on the Hotel Properties. The Senior Secured Creditors shall enjoy all liens and protections afforded in their pre-petition loan documents until the entire indebtedness is paid in full. Debtors, only with consent of the relevant Senior Secured Creditor, may seek to modify the terms of the debt to facilitate cash flow.  The specific treatment is set forth in the Plan and is summarized on Exhibit ____.

C.      Class 3 - Junior Secured Creditors.  Debtors will pay Junior Secured Creditors, with inferior liens to the Class 2 creditors, the full principal due and interest at three and three-quarters percent (3.75%) in equal payments over seven (7) years.  Payments will begin September 30, 2011 and will be due annually for an additional six (6) years.  The annual payments are set in October to facilitate cash flow as Debtors experience their most profitable months during the summer months.

The potential Junior Secured Creditors and the alleged amount of their claims are set forth on Exhibit D.  Most of the Junior Secured Creditors have currently been placed by Debtors in Class 9 pending resolution of their claims.  However, Debtors' cash flow projections assume all Class 9 claims will be allowed and paid.  Debtors must object to the claims of Junior Secured Creditors prior to sixty (60) days after Confirmation.

D.      Class 4 - Franchise Claims and Assumed Contract Claims.  Various Debtors have obligations to entities which obligations are related to their franchise agreements.  These obligations will be paid according to the respective franchise agreements.  Franchise agreements exist with Baymont Franchise Systems, Wyndam Worldwide, and HLT Existing Franchise Holdings.  Various Debtors may have other executory contracts which they wish to assume pursuant to the Plan.  Debtors at the present time do not intend to reject any franchise contracts.

E.      Class 5 - Administrative Convenience Claims.  Class 5 consists of claims which are less than $2,000.  Such claims shall be paid in full within sixty (60) days after Confirmation.  Any creditor with an allowed claim in excess of $2,000 may elect to be treated as a Class 5 Administrative Convenience Claim by electing to accept $2,000 in full satisfaction of its claim.  The expected unsecured claims are summarized by Debtors on Exhibit D.

F.      Class 6 - General Unsecured Creditors.  Allowed unsecured claims will be paid by Debtors in full, but without interest.  Debtors will pay the allowed General Unsecured Creditors in equal payments over seven (7) years.  Payments will begin September 3, 2011 and will be due annually for an additional six(6) years.  General Unsecured Creditors will have the option of electing to be treated under Class 5.  The expected unsecured claims are summarized by Debtors on Exhibit D.

G.      Class 7 - Insider Claims.  This class consists of claims of various parties who would be classified as "insiders" under the Bankruptcy Code.  These claims primarily are claims for money provided to the Debtor entities to complete construction on the various Hotel Properties.  If the Insider is an equity interest owner of the entity to which money was provided, the claim will be converted to equity in that Debtor.  The claim will become part of the Insider's Class 11 claim.  Insider claims which are not

converted to equity will be paid on the same terms as Class 6. Payment will be over seven (7) years. Further, payment to this class will be subordinated and may only be paid if Debtors are current on all other payments and subject to Debtors having available cash. The expected unsecured claims are summarized by Debtors on Exhibit D. If the Insider is not an owner of the Debtor entity to which the money was provided, the Insider will have a Class 7 claim.

H.    Class 8 - Intercompany Claims.  There are various intercompany claims pursuant to which some Debtor entities owe other Debtor entities money.  These claims will be satisfied through issuance of Holding Company stock to the entity owed the claim or will be treated as Class 7 claims.  If the claim exceeds $25,000, then the Holding Company will then become an equity owner of an interest in the Debtor entity which owes the claim in exchange for the claim.  This will become a Class 11 claim. Debtor entities will be responsible for paying any claim that is not converted as a Class 7 claim; however, payment of the claim will be subordinated to payment of all other claims.  Payment can be made so long as the Debtor entity is current with all other Plan payments and subject to Debtors' having available cash. The expected unsecured claims are summarized by Debtors on Exhibit D.  The expected claims which will be converted to equity are detailed on Exhibit D.

I.    Class 9 - Disputed Mechanic's Lienholders.  This class consists of creditors, other than the Senior Secured Creditors, who are claiming liens against Debtors.  Debtors will have sixty (60) days after Confirmation to object to these creditors' claims.  Upon resolution of those claims upon entry of an order by the Court, the claims will receive treatment either as a Class 3 Junior Secured Claim, a Class 5 or Class 6 unsecured claim, or if the claim is disallowed entirely by the Court, then the claim will remain in Class 9.  Class 9 claims will not receive a distribution pursuant to the Plan.

J.    Class 10 - Auer Litigation Claims.  The claims of Auer Corporation and Raymond Teague have been placed in Class 10.  Debtors believe that resolution of such claims will not occur until after Plan Confirmation and after resolution of the Auer Litigation.

    1.    Auer has alleged claims, including lien claims, against each of the Debtor entities as previously described.  Adversary proceedings, as previously described, have been initiated to determine the Auer Litigation Claims.  The Auer Litigation Claims will be prosecuted by the Holding Company on behalf of Debtors pursuant to the Litigation Agreement.

    2.    Upon resolution of those claims upon entry of an order by the Court, the claims will receive treatment either as a Class 3 Junior Secured Claim, a Class 5 or Class 6 unsecured claim, or if the claim is disallowed entirely by the Court, then the claim will remain in Class 10.  Class 10 claims will not receive a distribution pursuant to the Plan.

    3.    The Holding Company will be responsible for prosecuting the litigation against Auer for the benefit of all defendants named in the Disputed Judgment.  Pursuant to this Plan, if the Holding Company is successful in recovering from Auer, it will be responsible for distributing any net proceeds after expenses received from that litigation back to the Debtor entities.

    4.    In the unlikely event Auer and Teague retain a judgment in excess of what a particular Debtor entity can reasonably repay, Auer and Teague will retain their rights as a creditor in the event of a Plan default.

K.    Class 11 - Equity Holder Claims.  Class 11 consists of the equity holders of each of the various Debtor entities.

1.      As described in connection with Class 7, Insider Claims which consist of additional cash injected into respective Debtors by equity interest holders may be converted to additional equity.  Carried interests will be allocated a dollar value credit if the interest holder actively engaged in operating the Debtor and completing construction of the respective Hotel Property.  Revised ownership interest percentages will be established prior to confirmation.

2.      The equity holders will have the option to: (1) elect to convert their equity in a particular Debtor entity into interests in the Holding Company, or (2) they may keep their adjusted interest in the specific Debtor entity in which they are an equity holder.  Conversion of adjusted Debtor equity interest into Holding Company stock will be accomplished pursuant to conversion ratios set by the Holding Company in return for the Holding Company to reflect the relative values of Debtors.  Distributions from the respective Debtor entities may be made to the Holding Company to the extent such Debtors have cash that is not required to meet obligations under the Plan.  It is anticipated that such distributions will be necessary to fund the Auer Litigation after Confirmation.

SURRENDERED PROPERTY CREDITORS: The treatment of creditors holding claims against properties held by Debtors that are surrendered will be treated as stated below.  It is believed Childress Hospitality will be the only Debtor to be treated pursuant to these provisions.

The Debtor entity will still confirm a plan.  The Debtor entity will become owned 100% by the Holding Company in return for the Holding Company's assumption and agreement to pay the administrative expenses for the Debtor entity and fund the Auer Litigation.  Debtors' claims in the Auer Litigation and claims against other Debtor entities will be assigned to the Holding Company.  The Holding Company will prosecute the Auer Litigation.  Any recovery from the Auer Litigation or from other Debtor entities attributable to the assigning Debtor will be distributed as follows: first to reimburse the Holding Company for any expenses it paid on behalf of the assigning debtor (including a pro-rata share of the litigation expenses), second on a pro-rata basis to the allowed unsecured, non-insider creditors.  Third to the allowed insider creditors, and fourth to the former interest holders of the assigning Debtor.  In summary:

CLASS 1 – paid by Holding Company
CLASS 2 – not applicable – the property will be surrendered in satisfaction of the debt
CLASS 3 – will become a Class 6 unsecured claim with the surrender of the property
CLASS 4 – not applicable, the contracts will be transferred with the property
CLASS 5 - will become a Class 6 unsecured claim with the surrender of the property
CLASS 6 – will receive payment, if any, on a pro-rata basis by Holding Company as described above
CLASS 7 – will receive payment only if Class 6 creditors are paid in full
CLASS 8 – will become a Class 6 unsecured claim with the surrender of the property
CLASS 9 – not applicable, no distribution will be received
CLASS 10 – to the extent Auer recovers a net claim, it will be treated as a Class 6 claim
CLASS 11 – interest is extinguished

## 8.      Holding Company Operation – Overview.

A Holding Company has been formed for the purpose of consolidating responsibility for the Auer Litigation into one entity.  The Holding Company expects to hold the controlling interest in three of the Debtors which will provide monthly cash flow.  In addition, the Holding Company will collect fees from each Debtor entity pursuant to the Litigation Agreement.  This cash flow will allow the Holding

Company to be able to fund the Auer Litigation as well as to fund the payment required to confirm a plan for the Debtor entities surrendering their respective hotel properties.  It is expected the Holding Company will hold the controlling interest in all Debtor entities except Perryton Hospitality and Borger Properties.

The Holding Company will enter into a Joint Litigation Agreement with all Debtors and Toli, Inc. to prosecute the Auer Litigation, which will give control of the litigation to the Holding Company. but the Litigation Agreement will require Debtors and Toli, Inc. to pay a percentage of gross revenue, or fixed amount, to the Holding Company to fund the expenses of the litigation.  It is anticipated that at Confirmation, there will collectively be $200,000 or more available to fund the administrative expenses necessary to confirm the plan and to fund the Auer Litigation.  This will include funds that may be needed to cure defaults, if any, with Senior Secured Creditors.  This money will be from a combination of cash on hand in the Debtor entities and contributions that will be made by parties being issued interests in the Holding Company, and contributions by shareholders of the respective Debtors.

The Holding Company structure will allow interest holders in the Holding Company to acquire a preferred participating interest in the Holding Company in return for providing capital to fund expenses of the Holding Company.  Such preferred interests will be entitled to receive a 50% dividend on their preferred investment before other interest holders in the Holding Company may receive a return.  Fees from the Litigation Agreement will be used to repay such preferred capital.

The Holding Company structure will also allow it to exchange interests in the Holding Company for additional hotel properties upon approval of 2/3rds of the holders in the Holding Company.

**9.       Specific Terms with Respect to the Holding Company and the Litigation Agreement.**

Certain shareholders of the various Debtors have organized a company known as Phoenix Hotel Holdings, LLC (the "Holding Company").  The initial members of the Holding Company are Preyesh Kumar, William Stiles, Robert Stiles, and Judy Kurani.  The Holding Company has been organized to be the central entity which will take responsibility for prosecuting the Litigation against Auer and Raymond Teague.

All six Debtor entities will participate in a "Litigation Agreement" which will govern the prosecution of the Litigation.  Pursuant to the Litigation Agreement, each operating Debtor entity will pay a fixed percentage of its monthly gross revenue to the Holding Company, which will then be used to fund the Litigation and to pay any expenses of the bankruptcy which will be paid by the Holding Company at Confirmation or may be paid by the Holding Company on behalf of all Debtors subsequent to Confirmation.  The fee is currently anticipated to be 4.5%.

The term of the Litigation Agreement will begin on the Confirmation date and conclude upon final disposition of the Auer Litigation and proceeds, if any, from the Auer Litigation.

For the term of the Litigation Agreement, a Litigation Oversight Committee (the "Oversight Committee") will be formed to direct the Auer Litigation.  Preyesh Kumar will be Chairman of the Oversight Committee.  Each Debtor will be entitled to have a representative on the Oversight Committee. (One individual may represent multiple Debtors.)  The management of the Holding Company and the composition of the Oversight Committee cannot be changed during the term of the Litigation Agreement except with approval of 80% of the membership of the Holding Company.

The Oversight Committee will be responsible for:

1.      Oversight of the Auer Litigation;

2.      Oversight of the Debtor entities during the term of the Litigation Agreement; and

3.      Oversight of financial aspects of the Auer Litigation.

During the term of the Litigation Agreement, the Debtor entities will be restricted in their activities as follows:

1.      Management fees may not be paid to Insiders of Debtors (however, Insiders may receive reasonable compensation for actual operational employment, subject to review by the Oversight Committee);

2.      No distributions may be made to shareholders, or on account of shareholders, except as needed to fund the Auer Litigation or repay amounts incurred by the Holding Company on behalf of Debtors; and

3.      Current Debtor financial information must be provided to the Oversight Committee upon request, to provide evidence of compliance with the terms of the Plan and the Litigation Agreement.

The Holding Company has arranged for capital contributions of approximately $200,000, which will be used to fund closing expenses upon Confirmation of the Plan.  Funds will also be used to fund the litigation expenses, including attorneys' fees of the Auer Litigation.  The fees collected from Debtors under the Litigation Agreement will be used to reimburse the Holding Company for the expenses it pays and will be used to pay expenses going forward.  Non-operating Debtor entities will obviously not have revenue to pay to the Holding Company; however, because those entities remain essential to the prosecution Auer Litigation, the Holding Company will have the right to offset any ultimate recovery against Auer against the amounts incurred on behalf of non-operating Debtor entities.

The Holding Company, through Preyesh Kumar and the Oversight Committee, will be responsible for prosecuting the litigation against Auer for the benefit of all defendants named in the Disputed Judgment.  Pursuant to this Plan, if the Holding Company is successful in recovering from Auer, it will then be responsible for distributing any net proceeds, after expenses, received from that litigation back to the Debtor entities.

Toli, Inc., which is currently in a Chapter 7 bankruptcy, Case No. 10-20274 in the Amarillo Division of the Northern District of Texas, will also be a participant in the Litigation Agreement, given that Toli, Inc. is also a judgment debtor on the Auer Judgment.  Toli, Inc., which does not have current monthly revenue, will pay a fixed monthly amount pursuant to the Litigation Agreement.

In addition to managing the Litigation Agreement, the Holding Company will also be utilized to hold the ownership interests in the Debtors of various shareholders who elect to contribute their ownership interests to the Holding Company.  It is anticipated that based on shareholder elections, the Holding Company will hold a controlling interest in three of the five operating Debtor entities.  It is anticipated the Holding Company will hold a controlling interest in Wheeler Hospitality, Decatur Hospitality, and Borger Hospitality.  It is anticipated that the Holding Company will hold a minority ownership interest, if any, in Borger Properties and Perryton Hospitality.  The Holding Company will

own 100% of the stock of Childress Hospitality in return for assuming the responsibility for prosecuting Childress Hospitality's litigation claims.

It is expected that the resulting Holding Company cumulative cash flow should be in excess of $20,000 per month considering fees under the Litigation Agreement and excess cash from the interest it will hold in the Reorganized Debtors.

The officers of the Holding Company will be: President - Preyesh Kumar and Secretary - Robert Stiles. Preyesh Kumar will manage day-to-day operations of the Holding Company, including managing the Auer Litigation. It is anticipated he will be compensated for those duties on a reasonable basis. The initial compensation will be $1,500 per month for the Auer Litigation/Oversight Committee duties and $1,000 per month for each entity in which the Holding Company has controlling interest.

**10.    Creditors Divided into Classes.**

The Bankruptcy Code requires Debtors to divide creditors into classes. That is, creditors with similar legal rights are put into the same class. All creditors and the classes they are in are shown in Exhibit D.

**11.    Creditors Have the Right to Vote on the Plan.**

After reading this Plan and Disclosure Statement, Creditors will have the right to vote on whether the Bankruptcy Court should confirm this Plan.

This Joint Plan is actually six different plans. One plan for each debtor entity. Separate orders confirming the Plans maybe entered for each Debtor entity at the discretion of Debtors and the Court. Separate analysis of the voting for each debtor will be done. Creditors may only vote for or against a plan of a debtor against which they hold a claim. It is possible that only some of the plans will be confirmed. If a specific debtor's plan is not confirmed, that debtor will have the right to seek relief from the Court to sever its case from further joint administration.

Each creditor should read this Combined Plan and Disclosure Statement carefully, discuss it with a lawyer, and then fill out the ballot that is attached. Debtors will assemble the ballots and report to the Bankruptcy Judge on _____. The Court will conduct the "Confirmation Hearing" in this case to decide whether to confirm the Plan on _____ at the Bankruptcy Court, _____, Amarillo, Texas.

**12.    Creditors Also Have the Right to Object to this Disclosure Statement and Creditors Have the Right to Object to the Confirmation of the Plan.**

If a creditor believes this Combined Plan and Disclosure Statement does not contain sufficient information to decide whether to vote for or against the Plan, the creditor may file a written objection with the Bankruptcy Court. If a creditor believes that the Plan does not meet the requirements of the Bankruptcy Code, the creditor may file a written objection with the Bankruptcy Court. The deadline for objections has been set for _____.

**13.    The Court May Approve this Plan and Limit Creditor's Legal Rights.**

The Court will consider only written objections that are timely filed and ballots that are timely

filed.  If no objections are filed (or if all objections are overruled by the Court) and at least one (1) class of creditors accepts the Plan, the Court may approve the Plan.  If the Court approves the Plan, all creditors will be bound, even if a Creditor did not vote and even if a creditor voted against the Plan.  This means that a creditor will not be allowed to collect its claim against Debtors except as provided in the Plan.

**14.    How Does a Class "Accept" the Plan?**

Each class is considered separately.  Only the creditors who vote are counted.  The Court will conclude that the class "accepts" the Plan if two requirements are met: (a) more than 50% of the voting creditors vote in favor of the Plan; and (b) those creditors voting in favor of the Plan hold at least two-thirds (2/3) of the total amount of the debt that is voted.

**15.    Which Class are You as a Creditor In, and How Do Debtors Propose to Treat the Class Under the Plan?**

The list of Debtors' creditors and how Debtors propose to classify them under the Plan is set forth in Exhibit D.  Debtors reserve the right to reclassify claims prior to Confirmation.

**16.    Parties Other Than Debtors are Being Afforded Protection Under the Plan.**

Certain individuals and entities may be liable for payment of some of the debts of Debtors as guarantors or co-debtors.  Pursuant to the Plan, guarantors shall remain liable in their capacity as guarantors on any debt for which they would be liable under state law or the relevant loan documents.  However, per the provisions of this Plan and the order confirming this Plan, all creditors receiving payment of their claims shall be enjoined from directly pursuing the guarantors or co-debtors for collection of the underlying claims so long as Debtors are current with their payment obligations pursuant to the Plan.

Specifically, upon confirmation of the Plan, all creditors of Debtors having an allowed claim herein shall be temporarily enjoined, pursuant to Section 105 of the Code, from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtors, individually, including, but not limited to, Harish Patel, Judi Kurani, and Preyesh Kumar, for the collection of all or any portion of their allowed claim, said injunction to remain in effect only for so long as Debtors comply with the terms of the Plan.  Any violation of the Plan that remains uncured for sixty (60) days after receipt by Debtors of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party.

**17.    Why are Creditors Being Enjoined from Collection Against Certain Parties?**

Harish Patel provides the ongoing day-to-day management of Debtors pursuant to this Plan in his capacity as President of Debtors other than Decatur Hospitality, Inc., Perryton Hospitality, Inc., and Wheeler Hospitality, Inc.  The President of Decatur is Judy Kurani.  The President of Perryton Hospitality, Inc. is Vikas Gupta.  The President of Wheeler Hospitality, Inc. is William Stiles.  Mr. Kumar will assume the position of Manager and President of the Holding Company and will have supervisory authority over all activities of Debtors in which the Holding Company owns a majority interest. Mr. Patel and Mr. Kumar will share an identity and interests such that a suit against them is essentially a suit against Debtors.  A third-party action against them will have an adverse impact on

Debtors' ability to accomplish reorganization.  Their efforts are essential to the successful completion of the Plan and the protection of the interests of other creditors and the equity investors.

Further, the Plan is a 100% Plan with respect to "retained properties" pursuant to which all creditors are being paid the full amount of their claims.

**18.    Are Creditors and Parties-in-Interest Being Enjoined from all Litigation Against Certain Parties?**

No.  A cause of action that arises from conduct for which a Debtor is not jointly liable, and which is not provided for in this Plan, is not enjoined.

**19.    What Compensation is Being Paid to Protected Principals?**

Mr. Kumar is not initially receiving any direct compensation from Debtors or the Holding Company.  Mr. Kumar will be compensated as previously disclosed at Confirmation.  Mr. Patel is currently receiving reasonable compensation from the respective Debtor entities for services provided. Post-Confirmation, Mr. Patel's compensation will be set in a reasonable amount to be set by the board of the relevant Debtor entity.  Subject to limitations in the Litigation Agreement, related entities may charge Debtors minimal management fees and bill for reimbursement of expenses.

**20.    What if a Creditor is Not Listed in Exhibit D?**

Exhibit D lists all creditors who will have an allowed claim.  All claims that Debtors agree to pay (or that are disputed) are listed in Exhibit D.  A creditor who is not listed and believes they should be should immediately seek legal assistance and should provide notice to Debtors' counsel of their claim.

**21.    How Do Debtors Propose to Remit Payments to Their Creditors?**

The claims of all creditors will be paid directly by Debtors as provided in this Plan.

**22.    How Do Debtors Propose to Pay Their Administrative Expenses and Fee Claims Under the Plan?**

As of the date of Confirmation, Debtors anticipates that it will owe administrative professional fees to the United States Trustee and its attorneys totaling about $130,000.  Each person/professional asserting a fee claim for services rendered or expenses incurred during Debtors' Chapter 11 proceeding shall file with the Bankruptcy Court, and serve on the United States Trustee, Debtors and its counsel, a fee application within fifteen (15) days after confirmation of Debtors' Plan. If necessary, Debtors will arrange for a capital contribution to the Holding Company to be paid on the Effective Date that will be sufficient to pay administrative claims.

Unless otherwise agreed by the holder of an administrative claim and his professionals, each shall receive from Debtors the amount of its allowed claim payable within ten (10) days from the latter of fifteen (15) days after confirmation of the Plan or after the Bankruptcy Court's approval of their respective fee applications.

**23.    Do Debtors Intend To Assume Their Executory Contracts/Leases?**

Debtors have franchise agreements which are critical to the success of this Plan.  Debtors will assume those agreements and continue to perform all obligations under the agreements.  With respect to surrendered properties, debtors will reasonably cooperate with the senior secured lenders to transfer the property with the franchise agreement intact.

**24.    Will Debtors Continue to File Operating Reports with the Court after Confirmation?**

Yes, Debtors shall continue to file operating reports with the Court until the entry of a final decree closing its case.  Debtors shall also continue to pay any and all United States Trustee fees imposed under the Bankruptcy Code as and when such fees become due until a final decree is entered in its case.

The Reorganized Debtors shall timely pay on the Effective Date all pre-confirmation quarterly fees owed to the United States Trustee.  The Reorganized Debtors also shall timely pay post-confirmation quarterly fees assessed under 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case.  After Confirmation, the Reorganized Debtors shall timely file with the Bankruptcy Court and, shall transmit to the United States Trustee, a true and correct statement of all disbursements for each quarter, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

**25.    What to Do for More Information.**

Creditors should talk to a lawyer about their rights and the responsibility in this case.  Creditors should have their lawyers call the lawyer for Debtors.  Debtors' lawyer is: Bill Kinkead; telephone: 806-353-2129, facsimile:806-353-4370.

If a creditor does not have a lawyer, but still wants more information, that creditor can call Debtors' lawyer directly.  HOWEVER, REMEMBER THAT DEBTORS' LAWYER CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE DEBTORS' LAWYER REPRESENTS DEBTORS, NOT CREDITORS.

**26.    How Much Do Debtors Propose to Pay Creditors?**

Creditors holding claims against retained properties will get 100% of the amount of their claims.  Secured creditors will receive interest as well.  Creditors holding claims against surrendered properties are unlikely to receive payment, unless there is a recovery attributable to that specific property in the Auer Litigation.  However, if the plan is not confirmed, then creditors holding claims against surrendered entities will have no possibility of any recovery. See Paragraph 5 above and Exhibit E for specific treatment.

**27.    Do Debtors Have Enough Money and Earnings to Make the Payments Called for in the Plan?**

Yes.  This will be accomplished with cash flow.  See attached Exhibit E.  If additional funds are needed to pay expenses required at Confirmation, such funds will be provided by shareholders of the Holding Company.

**28.    Liquidation Analysis - Are There Any Alternatives to the Plan?**

There are two alternatives: liquidation or dismissal. Liquidation will not bring a sufficient amount to pay the secured debts in full. Debtors are single asset real estate entities. If Senior Secured Creditors are allowed to foreclose, Debtors do not believe there will be any money available for other creditors. Other than claims against Auer Corporation, which Debtors will not have funds to pursue, there are no other assets to liquidate. Consequently, unsecured creditors would not be paid any distribution on their claims.

Two of the seven properties have been foreclosed upon since inception of the bankruptcy. Because of the current real estate market, neither property brought more than the secured lender was owed. Debtors believe the same result will occur if the other Debtors are liquidated. The Childress property was foreclosed on October 5, 2010. The bank was the successful bidder at the sale. No other bids were received. The Stanton property was foreclosed on October 5, 2010. The successful bidder was an entity affiliated with guarantors on the bank debt. There were no other bidders and there was no equity for any other creditors. Debtors believe that liquidation of any of the other properties would have the same result.

If the case is dismissed, Auer would be able to go forward with attempts to execute on the Disputed Judgment. Debtors do not have the resources to provide a bond of sufficient amount to appeal the Disputed Judgment and it is anticipated that Debtors would be liquidated. There would be no money for Unsecured Creditors in such case.

**29.    Is There Any Risk That the Plan Might Not Succeed?**

Yes. If Debtors are unable to create and maintain sufficient cash flow, then they may not be able to make the Plan payments as set forth. If Debtors are unsuccessful in setting aside the Disputed Judgment, there is no guarantee Debtors could continue to operate.

**30.    Are There Any Tax Effects of this Plan?**

Debtors suffer no adverse tax effects because of the Plan. Creditors should consult their own tax advisors.

**31.    [IGNORE THIS PARAGRAPH UNTIL THIS DOCUMENT IS APPROVED AS A DISCLOSURE STATEMENT. NO PARTY IS AUTHORIZED OR ALLOWED TO SOLICIT SUPPORT FOR THIS PLAN ON BEHALF OF DEBTORS UNTIL THIS DISCLOSURE STATEMENT IS APPROVED.]**

**Please Vote for this Plan.**

Debtors ask that the Creditors vote in favor of this Plan because it will allow Debtors with retained properties to pay all of their creditors in full and still stay in business and will allow Debtors with surrendered properties to have some possibility of paying creditors, depending on the outcome of the Auer Litigation. Debtors think that this is more than the creditors will receive if the Plan is not confirmed. If the Plan is not confirmed, Debtors do not believe Junior Secured Creditors or Unsecured Creditors will receive any distribution.

REMEMBER THAT THE DEADLINE FOR BALLOTS IS _____

Mail your ballot to:    KINKEAD LAW OFFICES
Attention: Bill Kinkead
6937 Bell St., Suite G
Amarillo, Texas  79109

**32.**     **Vesting of Property in the Reorganized Debtors.**

On the Effective Date, all property of Debtors shall vest in the Reorganized Debtors free and clear of all liens, claims, interests, and charges arising on or before the confirmation of the Plan, except as provided in this Plan or in the confirmation order on the condition that the Reorganized Debtors comply with the terms of the Plan, including making all payments to creditors provided for in this Plan. If the Reorganized Debtors default in performing under the provisions of this Plan and this case is converted to a case under Chapter 7 prior to substantial consummation of this Plan, all property vested in the Reorganized Debtors and all subsequently acquired property owed as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

**33.**     **Effective Date.**

The Effective Date of the Plan shall be eleven (11) days following entry of an order confirming the Plan or such other date as Debtors may set.

## B.    PLAN OF REORGANIZATION

## ARTICLE 1
### Definitions

**1.01.**     **Administrative Expense Claims:**  Claims which arise from those expenses described in Section 503 of the Bankruptcy Code.

**1.02.**     **Allowed Claim:**  A claim with respect to which: (a) a proof of claim has been filed with the Court on or before the bar date fixed by the Court, or (b) Debtors have scheduled in a list of creditors prepared and filed with the Court pursuant to Rule 1007 and such claim not listed as disputed, contingent, or unliquidated as to amount; and in either case, a claim: (i) to which no objection has been timely filed by any party-in-interest, or (ii) that has been allowed by order of the Court that has become final and is no longer subject to appeal.

**1.03.**     **Allowed Priority Claim:**  An Allowed Claim for which the holder asserts and is determined to be entitled to priority under Section 507, *et seq.*, of the Bankruptcy Code in an amount allowed by final order of the Court; Administrative Expense Claims or Class 1 Claims.

**1.04.**     **Allowed Senior Secured Claim:**  A Secured Allowed Claim against a particular Debtor held by a creditor that is secured by a first lien on substantially all of Debtors' assets to finance construction of the Hotel Properties.  The Class 2 Claims.

**1.05.**     **Allowed Unsecured Claim of General Creditors:**  An Unsecured Allowed Claim against Debtor s that is not an Allowed Priority Claim or an Allowed Unsecured Claim of a creditor in Class 4, Class 5, Class 7, or Class 8.  The Class 6Claims.

**1.06.    Allowed Unsecured Claims of Insiders:**  An Unsecured Allowed Claim against Debtors that is held by an Insider.  The Class 7 Claims.

**1.07.    Auer:**  Auer Corporation, Inc.

**1.08.    Auer Entities:**  Auer Corporation and Raymond Teague and any other entity adverse to Debtors against which Debtors have a claim relating to the construction contracts with Auer.

**1.09.    Auer Litigation:**  Litigation between Auer Entities and Debtors over the Disputed Judgment and other issues.

**1.010.   Bankruptcy Code:**  The United States Bankruptcy Code as codified at 11 U.S.C. § 101, *et seq*.

**1.011.   Cash Contribution:**  Cash to be paid by certain Shareholders to the Holding Company and distributed by the Holding Company to pay administrative claims upon the Effective Date of the Plan.

**1.012.   Causes of Action:**  Causes of action held by Debtors against third parties.

**1.013.   CB Shamrock:**  Citizens Bank of Shamrock, Texas, the Senior Secured Creditor on the Baymont Inn located in Wheeler, Texas and owned by Wheeler Hospitality, and the Baymont Inn located in Perryton, Texas and owned by Perryton Hospitality.

**1.014.   CNB Childress:**  Citizens National Bank - Childress, Texas, the Senior Secured Creditor on the Hampton Inn located in Childress, Texas and owned by Childress Hospitality, LP, and the Baymont Inn located in Stanton, Texas and owned by Borger Hospitality, Inc.

**1.015.   Equity Security Holders:**  Holders of any common stock or other equity securities or interests (including without limitation any options, warrants, or LLC interests) issued pre-petition by Debtors, other than holders of any equity securities which have preference rights over general equity securities.  The Class 11 Claimants.

**1.016.   Confirmation:**  Approval of the Plan by the Court, which shall occur the date upon which the Confirmation Order is entered.

**1.017.   Confirmation Order:**  The order of the Court confirming the Plan of Reorganization.

**1.018.   Consummation:**  The time when the last act required under the Plan has been completed.

**1.019.   Debtors:**  Borger Hospitality, Inc., Borger Properties, Inc., Childress Hospitality, LP, Decatur Hospitality, Inc., Perryton Hospitality, Inc., and Wheeler Hospitality, Inc.

**1.020.   Disputed Judgment:**  Post-answer default judgment taken by Auer and Teague in Cause No. 09-01-00563 on February 12, 2010, against Toli, Inc. and all Debtors except for Perryton Hospitality, Inc.

**1.021.  Effective Date:**  Eleven (11) days following the entry of the Confirmation Order or such other date set by Debtors following Confirmation.

**1.022.  Holding Company:**  Proposed entity to be formed pursuant to the Plan to accept from, and prosecute on behalf of, Debtors the claims against Auer Corporation.  The entity is expected to own a majority interest in most or all Debtors pursuant to the Plan.

**1.023.  Hotel Properties:**  The real property of Debtors.  More specifically, the Baymont Inn owned by Wheeler Hospitality, Inc.; the Baymont Inn owned by Perryton Hospitality, Inc.; the Hampton Inn owned by Childress Hospitality, LP; the Baymont Inn owned by Borger Hospitality, Inc.; the Baymont Inn owned by Borger Hospitality, Inc.; the Baymont Inn owned by Decatur Hospitality, Inc.; and the Hampton Inn owned by Borger Properties, Inc.

**1.024.  Insider:**  Insider is given the meaning set forth under Section 101(31) of the Bankruptcy Code.  Insiders are identified as the Class 7 claimants on Exhibit D.

**1.025.  Interstate:**  Interstate Bank - Amarillo, Texas, the Senior Secured Creditor on the Baymont Inn located in Decatur, Texas, owned by Decatur Hospitality, Inc.

**1.026.  Junior Secured Creditors:**  Creditors holding secured claims against Debtors that are inferior to the senior secured claims.

**1.027.  Kumar:**  Preyesh Kumar, a shareholder in several Debtor entities.  Proposed President of the Holding Company.

**1.028.  Litigation Agreement:**  Agreement between Debtors, Toli, Inc., and the Holding Company, pursuant to which the Holding Company will prosecute the Auer Litigation.

**1.029.  NBC Shamrock:**  National Bank of Commerce - Shamrock, Texas, the Senior Secured Creditor on the Hampton Inn located in Borger, Texas and owned by Borger Properties, Inc.

**1.030.  Oversight Committee:**  Holding Company committee formed to oversee the Auer Litigation.  The Committee will be chaired by the President of the Holding Company and have a representative of each Debtor.

**1.031.  Patel:**  Harish Patel, President of Debtor entities on the Petition Date.

**1.032.  Petition Date:**  The date on which Debtors filed their petitions for relief, March 12, 2010.

**1.033.  Plan:**  This Plan of Reorganization.

**1.034.  Reorganized Debtors:**  Debtors on and after the Effective Date.

**1.035.  Retained Assets:**  The assets of Debtors which will revest in Debtors on the Effective Date, subject to the Allowed Secured Claims.  Debtors will retain all assets pursuant to this Plan.

**1.036.  SD Adversary Proceeding:**  Adversary Proceeding No. 10-03171 pending in the Bankruptcy Court for the Southern District of Texas between Debtors, Auer, and Teague.

**1.037.  SEC:**  Securities and Exchange Commission - United States of America.

**1.038.  Secured Claims:**  Allowed secured claims of any creditor whose claim is secured by a valid, perfected security interest in pre-petition property of the Debtors. The Class 2 and 3 Claims.

**1.039.  Senior Secured Creditors:**  Banks holding a first lien on the respective Hotel Properties.

**1.040.  Teague:**  Raymond Teague

**1.041.  Toli, Inc.:**  A Texas corporation solely owned by Harish Patel, which has filed for relief under the Bankruptcy Code in Case No. 10-20274-RLJ-11, pending in the Amarillo Division of the Northern District of Texas.

**1.042.  Unclassified Claims:**  Claims which pursuant to Section 1123(a)(1) of the Bankruptcy Code are not classified and which includes collectively all claims accorded priority pursuant to Sections 507(a)(1), 507(a)(2), and 507(a)(8) of the Code.

**1.043.  Unsecured Creditors:**  All Unsecured Creditors holding unsecured claims that are not Allowed Priority Claims; Class 5, Class 6, and Class 7Claimants.

**1.044.  WTS Bank:**  West Texas State Bank - Snyder, Texas, the Senior Secured Creditor on the Baymont Inn located in Snyder, Texas and owned by Borger Hospitality, Inc.

### ARTICLE 2
### Classification of Claims

**Administrative Expense Claims which are accorded priority pursuant to Section 507(a)(1) and Allowed Priority Claims pursuant to Sections 507(a)(2) and 507(a)(8) are not separately classified.**

**2.01.**   **Class 1:**   Tax Claims, Allowed Priority Claims under Section 507(a)(3) to (a)(7) of the Bankruptcy Code

**2.02.**   **Class 2:**   Senior Secured Creditors:
2(a):  Claim of CB Shamrock against Wheeler Hospitality, Inc.
2(b):  Claim of CB Shamrock against Perryton Hospitality, Inc.
2(c):  Claim of CNB Childress against Childress Hospitality, LP
2(d):  Claim of CNB Childress against Borger Hospitality, Inc.
2(e):  Claim of WTS Snyder against Borger hospitality, Inc.
2(f):  Claim of NBC Shamrock against Borger Properties, Inc.
2(g):  Claim of Interstate against Decatur Hospitality,

**2.03.**   **Class 3:**   Junior Secured Creditors

**2.04.**   **Class 4:**   Franchise Claims

**2.05.**    **Class 5:**    General Unsecured Administrative Convenience Claims

**2.06.**    **Class 6:**    General Allowed Unsecured Claims

**2.07.**    **Class 7:**    Allowed Unsecured Claims of Insiders

**2.08.**    **Class 8:**    Intercompany Claims

**2.09.**    **Class 9:**    Disputed Mechanics Lienholders

**2.010.**   **Class 10:**   Auer Litigation Claims

**2.011.**   **Class 11:**   The interests of Common Equity Security Holders

### ARTICLE 3
### Treatment of Claims and Interests

Except as expressly provided in this Plan, all classes of claims are impaired to some extent under the Plan.

**A.**    **Administrative and Priority Claims**

**3.01.    Unclassified Administrative Claims.**    Administrative Expense Claims which are accorded priority pursuant to Section 507(a)(1) and Allowed Claims under 507(a)(2) are not impaired and shall receive cash in the full amount of each such claim on the later of: (i) the Effective Date, or (ii) ten days after such claim becomes an Allowed Claim, unless the holder of the claim agrees to less favorable treatment.  It is not believed that there are any such claims in this category other than administrative claims owing Debtors' counsel and Debtors' other retained professionals, which claims will be paid subject to Court approval.

**3.02.    Unclassified Tax Claims.**  Allowed Priority Claims pursuant to Section 507(a)(8) are not impaired and shall be paid as follows:

1.    Except as may otherwise be agreed to by the parties, claims will be paid in full on or within sixty (60) days after the Effective Date;

2.    Within sixty (60) days after the Effective Date, the Reorganized Debtors shall file objections to the allowance of a claim pursuant to Section 507(a)(8) that is disputed.  Ten (10) days

after the entry of a final order allowing the amount, if any, of such claim, the allowed portion of all such disputed claims shall be paid consistent with the provisions above.

  **3.03.**  **Class 1.** Allowed Priority Claims under Section 507(a)(3) to (a)(7) of the Bankruptcy Code shall be paid in cash in full on the Effective Date of the Plan, or as soon thereafter as reasonably practical, unless otherwise agreed by the applicable claimant.  It is not believed that there are any such claims in this category.  Class 1 is not impaired under the Plan.

**Senior Secured Claims**

  **3.04**.  **Class 2.** On the Effective Date, the Class 2 Secured Claims of the Senior Secured Creditors shall be deemed allowed in the amounts set forth.  Each Senior Secured Creditor's rights with respect to its collateral will be governed and restricted according to the terms of its existing loan and security documents, the terms and provisions of the Plan, and any post-confirmation loan documentation required by the Plan.  The Secured Claims will be paid by the Reorganized Debtors according to the terms of the existing loan and security documents as modified in this Plan and set forth in any post-confirmation loan documentation required by the Plan.  Each secured claimant will retain its respective security interests in the collateral securing its claim.  To the extent a Class 2 Senior Secured Creditor is under-secured, (a) it shall have no recourse for such deficiency against the Reorganized Debtors, and (b) it may seek to have its deficiency treated as a Class 6 Allowed Unsecured Claim, subject to objections of the Reorganized Debtors.  Notwithstanding anything to the contrary that may be contained elsewhere in the Plan, all rights and remedies of each Senior Secured Creditor against any guarantor guaranteeing payment of the pre-petition loan that gives rise to any claim herein of a Senior Secured Creditor are preserved in all respects and not altered in any fashion by the Plan.  Class 2 is impaired under the Plan.

    1.  Class 2(a) - Senior Secured Claim of CB Shamrock against Wheeler Hospitality, Inc., which results from the unpaid balance of Wheeler Hospitality's August 9, 2007 $2,280,000.00 promissory note made payable to CB Shamrock's order (the "CB Shamrock/Wheeler Pre-Petition Note"), is deemed allowed in the amount of $2,174,288.12 principal and $12,638.05 interest as of October 6,

2010, plus interest to continue to accrue from the Petition Date at the rate of $468.08 per day as provided in the CB Shamrock/Wheeler Pre-Petition Note, plus post-petition advances, plus attorneys' fees through the confirmation date, less payments made post-petition.  The claim will be paid on and be subject to the following terms:

a.      The reorganized Wheeler Hospitality will execute a modification of the CB Shamrock/Wheeler Pre-Petition Note on a form acceptable to CB Shamrock (the "CB Shamrock/Wheeler Confirmation Note") and consistent with the Plan providing for monthly installment payments of principal and interest that will be amortized over 240 months at an interest rate equal to the prime rate of interest as published in the Wall Street Journal on the Effective Date, with a floor of five percent (5.0%) per annum and a ceiling of ten percent (10.0%) per annum.  The interest rate will be fixed for five (5) year periods.  The interest rate and payment amount under the CB Shamrock/Wheeler Confirmation Note will adjust on each 5th anniversary prior to its maturity.

b.      The reorganized Wheeler Hospitality, Inc.'s payment of the CB Shamrock/Wheeler Confirmation Note will continue to be secured by the liens and encumbrances against the Hotel Property as set forth in the deed of trust dated August 9, 2007 and recorded in volume 570 beginning at page 604 of the Official Public Records of Wheeler County, Texas (the "CB Shamrock/Wheeler Deed of Trust") and such liens and encumbrances are determined to be first and superior liens and encumbrances against the Hotel Property described thereon.  The reorganized Wheeler Hospitality, Inc. will execute a modification and extension the CB Shamrock/Wheeler Deed of Trust on a form acceptable to CB Shamrock (the "CB Shamrock/Wheeler Confirmation Deed of Trust") and consistent with the provisions of the Plan.  The reorganized Wheeler Hospitality, Inc., at CB Shamrock's request, will obtain at its expense a T-38 endorsement to the mortgagee's policy of title insurance that has been issued with respect to the CB Shamrock/Wheeler Deed of Trust.  In the event upon CB Shamrock's request, the reorganized Wheeler Hospitality, Inc. is unable to obtain such a T-38 endorsement to the

existing mortgagee's policy, then a new mortgagee's policy will need to be obtained at the reorganized Wheeler Hospitality, Inc.'s expense.

   c. The reorganized Wheeler Hospitality, Inc. must execute, or obtain execution and delivery to CB Shamrock, of such other confirmation loan documents as are requested by CB Shamrock, consistent with the confirmed plan, including specifically new guaranty documents by each of the guarantors to evidence their continued guarantee of payment of the reorganized Wheeler Hospitality, Inc.'s indebtedness to CB Shamrock.

   d. Notwithstanding the forgoing, in the event prior to Effective Date, Debtor pays all accrued and unpaid interest under the CB Shamrock/Wheeler Pre-Petition Note, then as of the date of such payment, the interest accrual on the CB Shamrock/Wheeler Pre-Petition Note will be modified to be an interest rate equal to the prime rate of interest as published in the Wall Street Journal with a floor of five percent (5.0%) per annum.  In the event of such modification, Debtor will execute a modification of the CB Shamrock/Wheeler Pre-Petition Note to evidence the modification of the applicable interest rate thereunder.

   2. Class 2(b) - Senior Secured Claim of CB Shamrock against Perryton Hospitality, Inc., which results from the unpaid balance of Perryton Hospitality's September 21, 2007 $2,896,000.00 promissory note made payable to CB Shamrock's order (the "CB Shamrock/Perryton Pre-Petition Note"), is deemed allowed in the amount of $2,874,792.75 principal and $44,066.91 interest as of October 6, 2010, plus interest to continue to accrue from the Petition Date at the rate of $638.84 per day as provided by the CB Shamrock/Perryton Pre-Petition Note, plus post-petition advances, plus attorneys' fees through the Confirmation date, less payments made post-petition.  The claim will be paid on the following terms:

   a. The reorganized Perryton Hospitality will execute a modification of the CB Shamrock/Perryton Pre-Petition Note on a form acceptable to CB Shamrock (the "CB Shamrock/Perryton Confirmation Note") and consistent with the Plan providing for monthly installment payments of principal and interest that will be amortized over 240 months at an interest rate equal to the

prime rate of interest as published in the Wall Street Journal, plus 0.50% per annum, on the Effective

Date, with a floor of five and one-half percent (5.5%) per annum.  The interest rate will be fixed for five

(5) year periods.  The interest rate and payment amount under the CB Shamrock/Perryton Confirmation

Note will adjust on each 5th anniversary prior to its maturity.

        b.      The reorganized Perryton Hospitality, Inc.'s payment of the CB

Shamrock/Perryton Confirmation Note will continue to be secured by the liens and encumbrances against

the Hotel Property as set forth in the deed of trust dated September 21, 2007 and recorded in volume 676

beginning at page 828 of the Official Public Records of Ochiltree County, Texas (the "CB

Shamrock/Perryton Deed of Trust") and such liens and encumbrances are determined to be first and

superior liens and encumbrances against the Hotel Property described thereon.  The reorganized Perryton

Hospitality, Inc. will execute a modification and extension the CB Shamrock/Perryton Deed of Trust on a

form acceptable to CB Shamrock (the "CB Shamrock/Perryton Confirmation Deed of Trust") and

consistent with the provisions of the Plan.  The reorganized Perryton Hospitality, Inc., at CB Shamrock's

request, will obtain at its expense a T-38 endorsement to the mortgagee's policy of title insurance that has

been issued with respect to the CB Shamrock/Perryton Deed of Trust.  In the event upon CB Shamrock's

request, the reorganized Perryton Hospitality, Inc. is unable to obtain such a T-38 endorsement to the

existing mortgagee's policy, then a new mortgagee's policy will need to be obtained at the reorganized

Perryton Hospitality, Inc.'s expense.

        c.      The reorganized Perryton Hospitality, Inc. must execute, or obtain

execution and delivery to CB Shamrock, of such other confirmation loan documents as are requested by

CB Shamrock, consistent with the confirmed plan, including specifically new guaranty documents by

each of the guarantors to evidence their continued guarantee of payment of the reorganized Perryton

Hospitality, Inc.'s indebtedness to CB Shamrock.

        d.      Notwithstanding the forgoing, in the event prior to Effective Date,

Debtor pays all accrued and unpaid interest under the CB Shamrock/Perryton Pre-Petition Note, then as

of the date of such payment, the interest accrual on the CB Shamrock/Perryton Pre-Petition Note will be modified to be an interest rate equal to the prime rate of interest as published in the Wall Street Journal, plus 0.50% per annum, with a floor of five and one-half percent (5.5%) per annum.  In the event of such modification, Debtor will execute a modification of the CB Shamrock/Perryton Pre-Petition Note to evidence the modification of the applicable interest rate thereunder.

3.      Class 2(c) - Claim of CNB Childress against Childress Hospitality, LP is deemed allowed in the amount of $4,109,823, plus interest at five percent (5.0%) from the petition date, plus post-petition advances, plus attorneys' fees through the Confirmation date, less payments made post-petition. The claim is deemed to be fully satisfied by CNB Childress' foreclosure on its security on October 5, 2010.  CNB Childress will not receive any further payment pursuant to the Plan.

4.      Class 2(d) - Claim of CNB Childress against Borger Hospitality, Inc. is deemed allowed in the amount of $2,948,726, plus interest at five percent (5.0%) from the petition date, plus post-petition advances, plus attorneys' fees through the Confirmation date, less payments made post-petition. The claim is deemed to be fully satisfied by CNB Childress' foreclosure on its security on October 5, 2010.  CNB Childress will not receive any further payment pursuant to the Plan.

5.      Class 2(e) - Claim of WTB Snyder against Borger Hospitality, Inc. is deemed allowed in the amount of $2,836,821.96, plus interest at five percent (5.0%) from the petition date, plus post-petition advances, plus attorneys' fees through the Confirmation date, less payments made post-petition.  The claim will be paid on the following terms:

a.      The payments will be those required under the Promissory Note to be executed effective December 31, 2010.   Those terms are generally as follows: (i) Principal: $2,800,000.00; (ii) Rate: 5.0%; (iii) Amortization: 360 months; (iv) Maturity: 60 months; and (v) Initial Payment Amount: $15,031.01.

6.      Class 2(f) - Claim of NBC Shamrock against Borger Properties, Inc. is deemed allowed in the amount of $5,039,100.69, plus interest at six percent (6.0%) from the petition date, plus

post-petition advances, plus attorneys' fees through the Confirmation date, less payments made post-petition. The claim will be paid on the following terms:

a.    At or prior to Confirmation, upon completion of construction of the Hotel Property, all post-confirmation amounts due will be rolled into a single new promissory note. The terms of the note will be: (i) Principal: $6,070,433.65 (estimated); (ii) Rate: 5.0%; (iii) Amortization: 360 months; (iv) Maturity: 60 months; and (v) estimated Initial Payment Amount (interest only) of $25,293.47 for six months with an estimated monthly payment of $32,587.46 thereafter.

7.    Class 2(g) - Claim of Interstate against Decatur Hospitality, Inc. is deemed allowed in the amount of $2,877,961.84, plus interest at five percent (5.0%) from the petition date, plus post-petition advances, plus attorneys' fees through the Confirmation date, less payments made post-petition. The claim will be paid on the following terms:

a.    At or prior to Confirmation, upon completion of construction of the Hotel Property, all post-confirmation amounts due will be rolled into a single new promissory note. The terms of the note will be: (i) Principal: $3,098,360.00 (estimated); (ii) Rate: 5.5%; (iii) Amortization: 240 months; (iv) Maturity: 60 months; and (v) Initial Payment Amount: $21,313.23.

**3.05**.    **Class 3.**  The Class 3 claims of Junior Secured Creditors, with inferior liens to the Class 2 creditors, will be paid the full allowed claim amount with interest which will begin accruing from the Effective Date at three and three-quarters percent (3.75%) in equal payments over seven (7) years. Payments will begin September 30, 2011 and will be due annually for an additional six (6) years. Debtors must object to the claims of Junior Secured Creditors prior to sixty (60) days after Confirmation. In the event the property which secures the creditor's claim is surrendered to, or foreclosed upon by the Senior Secured Creditor, such surrender or foreclosure will immediately convert the Creditor's allowed claim to a Class 6 claim and such claim will be paid pursuant to the treatment set forth in Class 6. Class 3 is impaired under the Plan.

**3.06**.    **Class 4.**  The Class4 Franchise Claims are deemed allowed and will be assumed and paid according to the respective franchise agreements.  Various Debtors have obligations to entities which obligations are related to their franchise agreements.  These obligations will be paid according to the respective franchise agreements.  Treatment of executory contracts other than Franchise Agreements are not Class 4 claims and are treated elsewhere in the Plan.  The Class 4 claims are not impaired under the Plan.

**C.    Unsecured Claims**

**3.07.**    The Allowed Claims of Unsecured Creditors are impaired and will be classified into four classes as follows: (a) Class 5 - Allowed Administrative Convenience Claims; (b) Class 6 - Allowed Unsecured Claims of General Creditors; (c) Class 7- Allowed Unsecured Claims of Insiders; and (d) Class 8 - Allowed Unsecured Intercompany Claims.

**3.08.**    **Class 5:**  Class 5 consists of allowed unsecured claims which are less than $2,000.

If the claim is against a Debtor which is retaining its Hotel Property, such claims shall be paid in full within sixty (60) days after the Effective Date.  Any creditor with an allowed claim in excess of $2,000 may elect to be treated as a Class 5 Administrative Convenience Claim by electing to accept $2,000 in full satisfaction of its claim.  If such claim is against a Debtor which is surrendering its Hotel Property, the claim will become a Class 6 claim, regardless of amount.  Class 5 is impaired under the Plan.

**3.09.**    **Class 6.**  The Allowed Unsecured Claims of General Creditors will be paid by Debtors retaining their Hotel Properties in full, but without interest.  Debtors will pay the allowed General Unsecured Creditors in equal payments over seven (7) years.  Payments will begin September 30, 2011 and will be due annually for an additional six (6) years.  General Unsecured Creditors will have the option of electing to be treated under Class 5.

The Allowed Unsecured Claims of General Creditors held against Debtors surrendering their hotel properties ("Assigning Debtors") will be paid on a pro-rata basis by the Holding Company from

"Recovered Funds" without interest.  Recovered Funds consist of any monies recovered by the Holding Company from claims held by the respective Assigning Debtor which assigned the claim to the Holding Company and will be reduced by any expenses paid by the Holding Company on behalf the Assigning Debtor and will be reduced by any expenses incurred by the Holding Company to collect the Recovered Funds.  The Holding Company will pay such claims within ninety (90) days after Recovered Funds are received.  Claims remain claims against the Assigning Debtor and are not claims being assumed by the Holding Company.  The only obligation of the Holding Company is to pay the net amount of Recovered Funds, if any, received by the Holding Company.

Upon payment of the claims as provided in this Plan, the remaining balance of the Class 6 Claims will be discharged, and Debtors will have no further obligation for payments to Class 6 Claimants.  Objections to any Class 6 Claims shall be filed within sixty (60) days after the Effective Date.

Class 6 claimants are impaired.

**3.10**.    **Class 7.**   The Allowed Unsecured Claims of Insiders shall be deemed allowed in the amounts set forth in Exhibit D as may be amended prior to Confirmation.  If the Insider is an equity interest owner of the entity to which money was provided, the claim will be converted to equity in that Debtor.  The claim will become part of the Insider's Class 11 claim.  If the Insider is not an owner of the Debtor entity to which the money was provided, the Insider will have a Class 7 claim.

Insider claims which are not converted to equity will be paid on the same terms as Class 6.  Debtors will pay the allowed Unsecured Claims of Insiders in equal payments over seven (7) years.  Payments will begin September 30, 2011 and will be due annually for an additional six (6) years.  Further, payment to this class will be subordinated and may only be paid if Debtors are current on all payments to Classes 1 through 6 and are subject to Debtors having available cash.

Upon payment of the claims as provided in this Plan, the remaining balance of the Class 7 Claims will be discharged, and Debtors will have no further obligation for payments to Class 7 Claimants.  Objections to any Class 7 Claims shall be filed within sixty (60) days after the Effective Date.

Class 7 claimants are impaired.

**3.11.    Class 8.**  The Intercompany Claims shall be deemed allowed in the amounts set forth in Exhibit D.  These claims will be satisfied through issuance of Holding Company stock or will be treated as Class 7 claims.  If the claim exceeds $25,000, then the Holding Company will then become an equity owner of an interest in the Debtor entity which owes the claim in exchange for the claim.  This will become a Class 11 claim.  Debtor entities will be responsible for paying any claim that is not converted as a Class 11 claim; however, payment of the claim will be subordinated to payment of all other claims. Payment can be made so long as the Debtor entity is current with all other Plan payments to Classes 1 through 6 and subject to Debtors' having available cash.  Upon payment of the claims as provided in this Plan, the remaining balance of the Class 8 Claims will be discharged, and Debtors will have no further obligation for payments to Class 8 Claimants.  Objections to any Class 8 Claims shall be filed within sixty (60) days after the Effective Date.

Class 8 claimants are impaired.

**3.12.    Class 9.**  This class consists of creditors who are claiming liens against Debtors.  Debtors have or will, within sixty (60) days after Confirmation, object to these creditors' claims.  Upon resolution of those claims, the claims will receive treatment either as a Class 3 junior secured claim, a Class 5 or 6 unsecured claim, or if the claim is disallowed entirely by the Court, then the claim will remain in Class 9. Class 9 claims will not receive a distribution pursuant to the Plan.  Class 9 is impaired under the Plan.

**3.13.    Class 10.**  The claims of Auer Corporation and Raymond Teague have been placed in Class 10.  Debtors believe that resolution of such claims will not occur until after Plan Confirmation and after resolution of the Auer Litigation.

1.    Auer has an alleged lien claim against Perryton Hospitality in the amount of $388,134. This claim will be treated as a Class 9 claim.  Upon resolution of the claims held by Auer and Teague by the Court, the claims will be treated in either Class 3, 5, 6, or 9, as appropriate.

2.     The claims of the Auer Entities against the Debtor entities, other than Perryton Hospitality, will be determined by the Court pursuant to the pending adversary proceedings.  Upon resolution of the claims held by Auer and Teague by the Court, the claims will be treated in either Class 3, 5, 6, 10, or 11, as appropriate.  To the extent the claims are disallowed entirely by the Court, then such claims will remain in Class 10.  Class 10 claims will not receive a distribution pursuant to the Plan.  Class 10 is impaired under the Plan.

### E.     Equity Interests

**3.14.    Class 11.**  The interests of the Equity Interest Holders of Debtors will be adjusted to reflect additional capital contributions and development credit on an entity by entity basis.  The adjusted equity interests will be retained on the Effective Date, with the option to convert to an interest in the Holding Company.  No distribution may be made on account of the equity interest held, except to the Holding Company, until Classes 5, 6, and 7 are paid in full.  Class 11 is impaired under the Plan.

Class 11 consists of the equity holders of each of the various Debtor entities.  If the Hotel Property which the equity holder invested in is surrendered or foreclosed upon, the equity holder will not have an option to convert their interest to Holding Company stock.  If the Hotel Property has been retained, the respective equity holders will have the option to: (1) elect to convert their adjusted equity in a particular Debtor entity into shares of the Holding Company, or (2) they may keep their adjusted interest in the specific Debtor entity in which they are an equity holder.  Pursuant to the Plan, no distributions will be allowed on account of such equity holders, except to the Holding Company, until such time as all Class 5, 6, and 7 claims have been paid in full.  As described in connection with Class 7, Insider Claims which consist of additional cash injected into respective Debtors by equity interests holders may be converted to additional equity.  Carried interests will be allocated a dollar value credit if the interest holder actively engaged in operating the Debtor and completing construction of respective Hotel Properties.  Revised ownership interests will be established.  The new ownership interests as

revised will be set forth at Plan Confirmation as an exhibit or upon appropriate motion to the Court within sixty (60) days of Confirmation.

Conversion of adjusted Debtor equity interest into Holding Company stock will be accomplished pursuant to conversion ratios set by the Holding Company to reflect relative values of Debtors. Distributions from the respective Debtor entities may be made to the Holding Company only if such Debtors have cash that is not required to meet other obligations under the Plan.  It is anticipated that such distributions will be necessary to fund administrative expenses and the Auer Litigation after Confirmation.

### ARTICLE 4
### Implementation of the Plan

**4.01.**   Except as otherwise provided in the Plan, the Reorganized Debtors will remain in possession and ownership of all of the assets of Debtors, without any liquidation being contemplated by this Plan, and  will continue to maintain and operate Debtors' assets.  Implementation of the Plan will be different depending on whether the respective Debtor entity has retained its Hotel Property or surrendered (voluntarily or by foreclosure) its Hotel Property.  "Surrendering Debtors" shall be those that no longer have a Hotel Property on the Effective Date.

After the Effective Date, the capitalization and financing of the Reorganized Debtors may be made on an as needed basis by the Holding Company.  All liens and security interests of the Senior Secured Creditors shall be preserved and remain in full force and effect, subject only to any modifications approved in this Plan.  The Reorganized Debtors shall take such actions as required by the Senior Secured Creditors to enforce, preserve, and otherwise maintain such liens and encumbrances, including without limitation executing any new documents, financing statements, or other instruments.  Documentation acceptable to Debtors and the Senior Secured Creditors will be executed and delivered to implement the Plan.

**4.02.**   Prior to the Effective Date, Debtors shall organize and form the Holding Company.

**4.03.**     Prior to the Effective Date, Debtors shall estimate the amount of Administrative Expense Claims to be paid and shall pay such claims.  If Debtors have insufficient funds to pay such claims, then the Holding Company shall pay, or make arrangements to pay, such estimated claims pursuant to this Plan by arranging for additional equity from equity interest holders of the Holding Company.  Such money paid by the Holding Company will become part of the Holding Company's claims for reimbursement pursuant to the Litigation Agreement.

**4.04.**     On or before the Effective Date, the Holding Company shall arrange post-confirmation financing with the Shareholders, or others, sufficient to fund payments necessary to pay all Unclassified Claims and Class 1 Claims, if any.  The Holding Company will execute with Debtors and with Toli, Inc. a Litigation Agreement with the terms set forth herein with respect to prosecuting the Auer Litigation.

**4.05**.     On the Effective Date, Debtors shall become the Reorganized Debtors and shall:

1.     Issue adjusted equity interests in the respective Debtors.

2.     Issue interests in the Holding Company as provided in this Plan and take steps necessary to effectuate the transfer of ownership of interest in Debtors to the Holding Company.

3.     The entire equity interest of Surrendering Debtors shall be extinguished and 100% of the interest of such Debtors shall be issued to the Holding Company in exchange for the Holding Company's payment of administrative expenses and litigation expenses of the Auer Litigation.  The Holding Company will manage each Surrendering Debtor for the benefit of creditors of that Debtor.

4.     Cause the Holding Company to pay the claims amounts, if any, due for Unclassified Claims or Class 1 Claims pursuant to the terms of the Plan.

5.     Transfer the responsibility for the Auer Litigation to the Holding Company.

**4.06.**     For any Debtor in which the Holding Company obtains a controlling interest, the Holding Company may immediately elect or appoint new directors, who may immediately appoint new officers.

**4.07.**     The Holding Company will remain in existence indefinitely.  At a minimum, it will not dissolve until the later of: (1) the term of the Litigation Agreement expires, or (2) the Senior Secured

Creditors' claims on Hotel Properties in which the Holding Company has controlling interests are paid, refinanced, or such Senior Secured Creditors consent to dissolution of the Holding Company.  Upon dissolution, the Holding Company may return the adjusted equity interests to the respective Debtor shareholders who voluntarily contributed their interest to the Holding Company, as equitably adjusted for events occurring during the existence of the Holding Company.

## ARTICLE 5

**5.01.**    This Joint Plan is contractually six different plans, one plan for each Debtor entity. Depending on the preferences of the Debtors and the Court, separate orders may be entered confirming the Plans for each Debtor entity.  Separate analysis of the voting for each Debtor will be done.  Creditors may only vote for or against a plan of a Debtor against which they hold a claim.  It is possible that only some of the plans will be confirmed.  If a specific Debtor's plan is not confirmed, that debtor will have the right to seek relief from the court to sever its case from further joint administration.  The general terms set forth for treatment of claims or implementation of a plan for the particular debtors are set forth in the following paragraphs.

**5.02.**    Wheeler Hospitality, Inc. – This Debtor is retaining its Hotel Property and a majority of its equity interest holders may exchange their interests for interests in the Holding Company.  This Debtor may be controlled by the Holding Company on the Effective Date.  It's allowed unsecured creditors should be paid in full, but without interest.

**5.03.**    Perryton Hospitality, Inc. - This Debtor is retaining its Hotel Property. Its equity interest holders do not intend to exchange their interests for interests in the Holding Company.  This debtor will be controlled by its existing equity holders on the Effective Date.  It's allowed unsecured creditors should be paid in full, but without interest.

**5.04.**    Childress Hospitality, Inc. - This Debtor's Hotel Property has been foreclosed.  Equity interests will be transferred to the Holding Company.  This Debtor will be owned by the Holding Company on the Effective Date.  It's allowed unsecured creditors will not be paid unless a recovery is obtained in the Auer Litigation.

**5.05.**    Borger Hospitality, Inc. - This Debtor is retaining its Hotel Property located in Snyder and a majority of its equity interest holders may exchange their interests for interests in the Holding Company.  This debtor's Snyder property may be controlled by the Holding Company on the Effective Date.  It's allowed unsecured creditors should be paid in full, but without interest.  This Debtor's Hotel Property located in Stanton has been foreclosed.  Its Class 6 allowed unsecured creditors should be paid in full from the Snyder property.  No other creditors holding claims against the Stanton property will receive payment.

**5.06.**    Borger Properties, inc. - This Debtor is retaining its Hotel Property and a majority of its equity interest holders are not expected to exchange their interests for interests in the Holding Company.  This Debtor will be controlled by its board on the Effective Date.  It's allowed unsecured creditors should be paid in full, but without interest.

**5.07.**    Decatur Hospitality, Inc. - This Debtor is retaining its Hotel Property and a majority of its equity interest holders may exchange their interests for interests in the Holding Company.  This Debtor may be controlled by the Holding Company on the Effective Date.  It's allowed unsecured creditors should be paid in full, but without interest.

**5.08.**    **Holding Company and Litigation Agreement Provisions**.  Phoenix Hotel Holdings, LLC (the "Holding Company") has been organized to be the central entity which will take responsibility for prosecuting the Litigation against Auer and Raymond Teague.

All six Debtor entities will participate in a "Litigation Agreement" which will govern the prosecution of the Auer Litigation.  Pursuant to the Litigation Agreement, beginning the first month after the Effective Date, each operating Debtor entity will pay 4.5% of its monthly gross revenue to the

Holding Company.  The Holding Company is authorized to use such funds to fund the Auer Litigation and to reimburse the Holding Company for expenses of the bankruptcy which will be paid by the Holding Company at Confirmation or may be paid by the Holding Company on behalf of all Debtors subsequent to Confirmation.

The term of the Litigation Agreement will begin on the Confirmation date and conclude upon final disposition of the Auer Litigation and final disposition of the proceeds, if any, from the Auer Litigation.

For the term of the Litigation Agreement, a Litigation Oversight Committee (the "Oversight Committee") will be formed to direct the Auer Litigation.  Preyesh Kumar will be Chairman of the Oversight Committee.  Each Debtor will be entitled to have a representative on the Oversight Committee. (One individual may represent multiple Debtors.)  The management of the Holding Company and the composition of the Oversight Committee cannot be changed during the term of the Litigation Agreement except with approval of 80% of the membership of the Holding Company.  (However, each Debtor entity may replace its representative on the Oversight Committee upon appropriate resolution of the Debtor's board.)

The Oversight Committee will be responsible for:

1.    Oversight of the Auer Litigation;

2.    Oversight of the Debtor entities during the term of the Litigation Agreement; and

3.    Oversight of financial aspects of the Auer Litigation.

During the term of the Litigation Agreement, the Debtor entities will be restricted in their activities as follows:

1.    Management fees may not be paid to Insiders of Debtors (however, Insiders may receive reasonable compensation for actual operational employment, subject to review by the Oversight Committee);

2.    No distributions may be made to shareholders, or on account of shareholders,

except as needed to fund the Auer Litigation or repay amounts incurred by the Holding Company on behalf of Debtors; and

3.     Current Debtor financial information must be provided to the Oversight Committee upon request, to provide evidence of compliance with the terms of the Plan and the Litigation Agreement.

4.     Non-operating Debtor entities will not be required to pay revenue to the Holding Company; however, the Holding Company will have the right to offset any ultimate recovery against the Auer Entities against the amounts incurred on behalf of non-operating Debtor entities.

5.     The Holding Company, through Preyesh Kumar and the Oversight Committee, will be responsible for prosecuting the litigation against Auer for the benefit of all defendants named in the Disputed Judgment.

6.     If the Holding Company is successful in recovering from Auer, it will then be responsible for distributing any net proceeds, after expenses, received from that litigation back to the Debtor entities.

7.     Toli, Inc., which is currently in a Chapter 7 bankruptcy, Case No. 10-20274 in the Amarillo Division of the Northern District of Texas, will also be a participant in the Litigation Agreement.  Toli, Inc. will pay a fixed monthly amount pursuant to the Litigation Agreement to be set by agreement between Toli, Inc. and the Holding Company.

8.     The Holding Company may hold the ownership interests in the Debtors of various shareholders who elect to contribute their ownership interests to the Holding Company.

9.     Pursuant to this Plan, the Holding Company will own 100% of the stock of Childress Hospitality in return for assuming the responsibility for prosecuting Childress Hospitality's litigation claims.

10.     The initial officers of the Holding Company will be: President - Preyesh Kumar and Secretary - Robert Stiles.  Preyesh Kumar will manage day-to-day operations of the Holding

Company, including managing the Auer Litigation.

## ARTICLE 6

**6.01.    Discharge of Debtors.**  Except as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of all claims, and interests of Equity Security Holders under the Plan will be in exchange for and in complete satisfaction, discharge, release, and cancellation of claims and the interests of the Equity Security Holders of any nature whatsoever, including, without limitation, any interest accrued on any claim from and after the Petition Date, against Debtors, the Reorganized Debtors, the Holding Company, or any of their respective assets and properties. (Consistent with the treatment set forth herein with respect to the Class 2 Senior Secured Claims, such claims are not discharged and will be paid according to the terms set forth in this Plan, and all liens and security interests of the Senior Secured Creditors in and to their respective collateral shall be preserved and remain in full force and effect.)  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation shall, as of the Effective Date:

1.    Discharge Debtors and the Reorganized Debtors from all claims, demands, liabilities, other debts, or interests that arose on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not:

a.    A proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code;

b.    Such claim is allowed pursuant to Section 502 of the Bankruptcy Code; or

c.    The holder of a claim has accepted the Plan.

2.    Terminate and cancel all rights and interests of the Equity Security Holders; and

3.    Preclude all persons from asserting against the Reorganized Debtors, its successors, or its assets or properties, any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

**6.02.   Injunction Related to the Discharge.**   Except as otherwise provided in the Plan or the Confirmation Order, all entities, including the Equity Security Holders, that have held, currently hold, or may hold equity security interests, claims, or other debts or liabilities against Debtors or the Reorganized Debtors that are discharged pursuant to the terms of the Plan are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such claims, debts, liabilities, or equity security interests:

1.   Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim, debt, liability, or equity security interests, or right, other than to enforce any right pursuant to this Plan;

2.   Enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Debtors, the Reorganized Debtors, or their property or interests in property, on account of any such claim, debt, liability, or equity security interests;

3.   Creating, perfecting, or enforcing any lien or encumbrance against Debtors, the Reorganized Debtors, or their property or interests in property on account of any such claim, debt, liability, or equity security interest;

4.   Asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to Debtors or the Reorganized Debtors or against its property or interests in property on account of any such claim, debt, liability, or equity security interest; and

5.   Commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

Such injunction shall extend to and for the benefit of any successor of Debtors, including, without limitation, the Reorganized Debtors and its respective property and interests in property.   Any entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**6.03.    Terms of Bankruptcy Injunction or Stays.**  All injunctions or stays provided for in Section 362 of the Bankruptcy Code, or otherwise, and in existence at Confirmation, shall remain in full force and effect until the Effective Date.

**6.04.    Releases by Holders of Claims.**  On the Effective Date, in exchange for and in consideration of, among other things, the payments set forth herein to or on behalf of Debtors for the benefit of holders of Allowed Claims, the financing provided to Debtors and the present and future undertakings in accordance with the terms of the Plan, each holder of a claim or interest shall be deemed to unconditionally release and forever waive all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever (other than the right to enforce Debtors' or the Reorganized Debtors' obligations under the Plan and the contracts, instruments, releases, and other agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part upon any transactions or matters with Debtors, or in connection with this bankruptcy case, the Plan, or the Disclosure Statement that occurred or could have occurred on or prior to the Effective Date against Debtors.

**6.05.    Injunction Related to Releases.**  The Confirmation Order will constitute an injunction permanently enjoining the commencement or prosecution by any entity, Equity Security Holder whether directly, derivatively, or otherwise, of any claim, demand, debt, liability, cause of action, or right that is released, discharged, or waived pursuant to the Plan against the released parties.

**6.06.    Exculpation.**  From and after the Effective Date, none of Debtors, the Reorganized Debtors, or any of their respective members, officers, directors, employees, professionals (*e.g.,* lawyers or accountants), lenders, or other representatives, shall have or incur any liability to any holder of a claim, Equity Securities for any act or omission in connection with, related to, or arising out of the bankruptcy case, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan (including objections to, and settlements of, claims

under the Plan), except for willful misconduct or gross negligence; and, in all respects, Debtors, the Reorganized Debtors, and each of their respective members, officers, directors, employees, professionals, lenders, or other representatives shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE 7
### Additional Provisions

**7.01.    Executory Contracts and Unexpired Leases.**  All contracts of insurance and all of the leases entered into by Debtors, as lessor, in the ordinary course of business and that remain as property of Debtors as of the Effective Date shall be deemed assumed by, and assigned to, the Reorganized Debtors as of the Effective Date (the "Assumed Leases"). In addition to the Assumed Leases, the additional leases and executory contracts set forth herein shall be assumed by Debtors, and deemed assigned to the Reorganized Debtors, as of the Effective Date.   This specifically includes assuming the Franchise Agreements.

Any lease or executory contract that is not an Assumed Lease or that is not listed in this Section 7.01 shall be deemed rejected as of the Effective Date unless a motion to assume such lease or executory contract is filed prior to Confirmation.

**7.02.    Allowance and Payment of Cure Sum Claims.**  Any entity whose executory contract or lease is assumed by the Reorganized Debtors pursuant to the Plan must file its cure sum claim[1] with the Court within thirty (30) days after the Effective Date ("Cure Sum Claim Bar Date"), or the right to assert such cure sum claim shall be deemed forever waived and barred.

Except as may otherwise be agreed to by the parties, within twenty-one (21) days after the Cure Sum Claim Bar Date, the Reorganized Debtors shall pay all undisputed cure sum claims or file its objection to the Allowance of any cure sum claims that are disputed.

---

[1]  In other words, the amount of money claimed as necessary for Debtors or reorganized Debtors to cure a past default.

All disputed cure sum claims shall be paid within ten (10) days after entry of a final order determining the amount of such cure sum claim; provided, however, that the Reorganized Debtors may, in its sole discretion, reject any previously assumed contract or lease to which it has interposed an objection to the allowance of the cure sum claim, within two (2) business days after the entry of a final order allowing the cure sum claim.

**7.03.   Bar Date for Filing Proofs of Claim Relating to Rejected Executory Contracts and Leases.**  If the rejection of an executory contract or unexpired lease gives rise to a claim, such claim will be forever disallowed, barred, and will be unenforceable against Reorganized Debtors, unless such claim is filed within thirty (30) days after the latter of the Effective Date or the date on which the Reorganized Debtors elects to reject a contract or lease otherwise previously assumed by the Plan.

**7.04.   Vesting of Property.**  Upon confirmation of the Plan and except as otherwise provided in this Plan, all of the property of the Chapter 11 estate shall vest in the Reorganized Debtors. Such vesting is expressly subject to the duties of the Reorganized Debtors set forth in this Plan.

**7.05.   Retention of Jurisdiction.**  Until full consummation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1.     The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of Confirmation, between Debtors and any other party-in-interest;

2.     The correction of any defect, curing of any omission, or reconciliation of any inconsistency in the Plan, the order of confirmation, or other document or instrument as may be necessary to carry out the purposes and intent of the Plan;

3.     The modification of this Plan after Confirmation;

4.     The enforcement and interpretation of the terms and conditions of this Plan, which specifically includes hearing objections to claims and resolution of disputes with respect to Retained Residuals and leases to which Debtors are a party; and

5.    The entry of any order necessary to enforce the title, rights, and powers of Debtors, and to impose such limitations, restrictions, terms, and conditions as the Bankruptcy Court may deem necessary.

**7.06.    Discrepancies.**  In the event of a discrepancy between the terms of the Plan and the Disclosure Statement, the terms of the Plan shall control.

**7.07.    Future Earnings.**  All income of Debtors shall be paid to the Reorganized Debtors, subject only to the continued perfected liens and security interests of the Senior Secured Creditors.

**7.08.    Claims and Actions.**  All claims and causes of action, if any, held by Debtors shall be retained by and remain the property of the Reorganized Debtors, except as set forth herein.

**7.09.    Waiver.**  Nothing contained herein shall constitute a waiver or release of any claim, counterclaim, or dispute that Debtors may have regarding the validity of any claim or lien by way of a subsequent adversary proceeding or amendment to the Plan in the event this Plan is not confirmed as filed.  The treatment outlined in this Plan is for the purposes of this Plan only and only in the event of confirmation of this Plan, and Debtors reserve the right to provide for different treatment of any claim in any amended or supplemental plan submitted by Debtors under this or any other chapter of the Bankruptcy Code.

**7.10.    Values.**  Any values set forth or referenced in this Plan are Debtors' estimates only based upon work performed by Debtors, Debtors' counsel, or independent accountants hired by Debtors. Values have been estimated by Debtors in conjunction with input from Debtors and from information gleaned from earlier records of Debtors.  In the event of a valuation hearing, Debtors reserve the right to present and rely upon expert appraisal testimony that may contradict the values set forth herein. These values (and those referenced in the accompanying disclosure statement) are also subject to further orders of the Bankruptcy Court.

**7.11.   Other Definitions.**   Except as expressly provided herein (as allowed under the Bankruptcy Code), reference is hereby made to the definitions set forth at Section 101 of the Bankruptcy Code.

**7.12.   Revocation.**   Debtors reserve the right to revoke and withdraw this Plan at any time prior to its confirmation.

**7.13.   Exemption from Transfer Taxes.**   Pursuant to Section 1129(c) of the Bankruptcy Code, no tax may be assessed or collected upon any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer pursuant to this Plan.

### ARTICLE 8
### Compliance with Confirmation Requirements

**8.01.   Compliance with Laws and Good Faith.**   Debtors believe that the Plan complies with all provisions of Chapter 11 and any other applicable provision of the Bankruptcy Code, that the Plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges, or amounts required to be paid before Confirmation have been paid.

### ARTICLE 9
### Procedure for Filing and Allowance of Claims and Interests

**9.01.**   Debtors believe that Debtors have scheduled, to their knowledge, all claims and interests. The failure of any claimant or holder of an interest that is scheduled to file a proof of claim or proof of interest before the claims deadline set by the Court will be deemed agreement to the manner in which the claim or interest was scheduled, except that a secured creditor will be entitled to the benefits of Section 506 of the Bankruptcy Code in the event its collateral is of a value in excess of its claim.

Respectfully submitted,

Bill Kinkead, SBN 11477400
KINKEAD LAW OFFICES
6937 Bell St., Suite G
Amarillo, Texas  79109
(806) 353-2129; (806) 353-4370 Fax

By:/s/ Bill Kinkead
    Bill Kinkead

*Counsel for Debtors*

## NOTICE OF RIGHT TO OBJECT AND HEARING
## ON DEBTORS' DISCLOSURE STATEMENT

**OBJECTIONS TO THE DEBTORS' DISCLOSURE STATEMENT MAY BE FILED BY ANY PARTY-IN-INTEREST. THE DEADLINE FOR FILING OBJECTIONS TO THE DEBTORS' DISCLOSURE STATEMENT IS <u>TWENTY EIGHT (28) DAYS</u> FROM THE SERVICE HEREOF. ANY OBJECTIONS OR OTHER RESPONSE TO DEBTORS' DISCLOSURE STATEMENT MUST BE FILED WITH THE U. S. BANKRUPTCY CLERK FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION AT 624 SOUTH POLK, AMARILLO, TEXAS, AND ALSO SERVED UPON THE UNDERSIGNED ATTORNEY-OF-RECORD FOR DEBTORS.**
**NO HEARING WILL BE CONDUCTED ON DEBTORS' DISCLOSURE STATEMENT IN THE ABSENCE OF A TIMELY FILED OBJECTION. IF NO OBJECTIONS ARE FILED IN A TIMELY MANNER, THE COURT MAY APPROVE DEBTORS' DISCLOSURE STATEMENT WITHOUT FURTHER NOTICE OR HEARING. IF AN OBJECTION IS TIMELY FILED, THE MATTER WILL BE HEARD BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION, ON THE BANKRUPTCY COURT'S MARCH 10, 2011 DOCKET AT 1:30 P.M. AT 624 SOUTH POLK, ROOM 100, AMARILLO, TEXAS 79101.**

**Under Bankruptcy Rule 9006(e) service by mail is complete upon mailing and under Bankruptcy Rule 9006(f). 3 days are added to the period for filing a response when the notice of the period is served by mail.**

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the above and foregoing document was this 13th day of January, 2011 served electronically on all appropriate parties in accordance with Bankruptcy Rules through the court's CM/ECF filing system and/or by U.S. first class mail, postage prepaid as follows:

**BY CM/ECF:**

Misti L. Beanland on behalf of Creditor Summers Group, Inc. dba Rexel
beanland@mssattorneys.com

Thomas A. Bunkley on behalf of Creditor National Bank of Commerce
bunkley41@hotmail.com

David S. Catuogno on behalf of Creditor Baymont Franchise Systems, Inc.
dcatuogno@formanlaw.com

Kirk E. Crutcher on behalf of Plaintiff Borger Hospitality, Inc.
kcrutcher@mcs-law.com, cmarshall@mcs-law.com;jparsons@mcs-law.com

Daniel M. Eliades on behalf of Creditor Baymont Franchise Systems, Inc.
deliades@formanlaw.com, dcatuogno@formanlaw.com

Franklin Scott Flow on behalf of Creditor Rhynehart Roofing, Inc.
Bankruptcy@flowlaw.com

Jacob M. Gold on behalf of Creditor McKinney Lumber Company LLC
firm@goldlawtexas.com

Melanie Pearce Goolsby on behalf of Creditor Dilip Patel
mgoolsby@pronskepatel.com,
gpronske@pronskepatel.com;rpatel@pronskepatel.com;cstephenson@pronskepatel.com;jkathman@pron
skepatel.com;smeiners@pronskepatel.com;admin@pronskepatel.com;lwhatley@pronskepatel.com;yakin
wolemiwa@pronskepatel.com

Charles Dick Harris on behalf of Creditor Citizens National Bank - Farmers National Bank of Seymour
dharris_law_firm@swbell.net

Gabriel Dean Herald on behalf of Creditor Citizens National Bank - Farmers National Bank of Seymour
gabeherald@roserockbank.com

John D. Herberger on behalf of Creditor Colorado Electric Supply, Ltd.
john@herbergerlaw.com

David M. Jones on behalf of Creditor Harish L. Patel and Preyesh Kumar
bankruptcy.docs@sprouselaw.com

Larry E. Kelly on behalf of Creditor HLT Existing Franchise Holding LLC
kelly@thetexasfirm.com, burch@thetexasfirm.com

Bill Kinkead on behalf of Consolidated debtor Borger Hospitality, Inc.
bkinkead713@hotmail.com, billkinkead@gmail.com

Jeff Lashaway on behalf of Creditor Ferguson Enterprises, Inc.
jlashaway@bdflawfirm.com

John Daniel Long on behalf of Creditor Chero-Key Piping Company
dlong@cjmlaw.com

John F. Massouh on behalf of Creditor Harish L. Patel and Preyesh Kumar
bankruptcy.docs3@sprouselaw.com

Myrtle Davis McDonald on behalf of Creditor West Texas State Bank
mmcdonald@epiqtrustee.com

S. Leon Mitchell on behalf of Creditor Jim Estes Construction, Inc.
slmitchell@sbcglobal.net

Christen Carlson Paquin on behalf of Creditor Cowtown Materials, Inc.
cpaquin@mssattorneys.com

Johnie Joe Patterson on behalf of Creditor Auer Corporation
jjp@walkerandpatterson.com, mwalker@walkerandpatterson.com

DLayne Peeples Carter on behalf of Creditor Hutchinson County Appraisal District
abragg@pbfcm.com

David M. Pyke on behalf of Creditor Iceberg Heating & A-C
dpyke@dallastrial.com

Richard B. Schiro on behalf of Creditor Signature Services Corporation
drnicholson@schirolaw.com, gebutts@schirolaw.com

Michael Wayne Sebesta on behalf of Creditor Triple J Alarm Systems, Inc.
msebesta@chfirm.com, chps.ecfnotices@gmail.com

Michelle E. Shriro on behalf of Creditor Baymont Franchise Systems, Inc.
mshriro@singerlevick.com, ckirkland@singerlevick.com;croote@singerlevick.com

Michael Andrew Stewart on behalf of Creditor CitizensBank
astewart@mhba.com

Don Dwight Sunderland on behalf of Creditor Interstate Bank, SSB
balderete@mhba.com, dsunderl@mhba.com

UST U.S. Trustee
ustpregion06.da.ecf@usdoj.gov, albert.loftus@usdoj.gov

Charles E. Wear on behalf of Creditor Aaon, Inc.
doa-cbf@prodigy.net

Elizabeth Weller on behalf of Creditor Wise CAD
dallas.bankruptcy@publicans.com, dalia.balderas@publicans.com;byron.wiley@publicans.com

Charles Coleman Young on behalf of Creditor Gaurav Patel
cole@templetonsmithee.com, tamme@templetonsmithee.com

## BY MAIL:

J. Randall Bays on behalf of Plaintiff Borger Hospitality, Inc.
Bays & Bays

1503 Hailey
Conroe, TX 77301

Kirk Crutcher
Mayfield, Crutcher & Sharpee, LLP
320 S. Polk, Ste. 400
Amarillo, TX 79101

Ferguson Enterprises, Inc.
c/o Jeff R. Lashaway
Boerner, Dennis & Franklin PLLC
P.O. Box 1738
Lubbock, TX 79408

Thomas A. McHale on behalf of Creditor Solomon Electric, Inc.
3618 Mt. Vernon
Houston, TX 77006

Scott W. Sharp on behalf of Creditor Associated Supply Company, Inc.
Timberlake, Weaver & Sharp, P.C.
1408 A Buddy Holly Avenue
Lubbock, TX 79401

William R. Sudela on behalf of Creditor Chero-Key Piping Company
Crady,Jewett & McCulley, LLP
2727 Allen Parkway, Suite 1700
Houston, TX 77019-2125

Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208

**/s/ Bill Kinkead**
Attorney for Debtors

615848_3.Doc